## STATE OF CONNECTICUT *v.* MAURICE BILLIE
### (SC 15929)

Callahan, C. J., and Borden, Berdon, Norcott and McDonald, Js.

Argued April 29—officially released August 10, 1999

*James P. Streeto*, special public defender, for the appellant-appellee (defendant).

*John A. East III*, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Gary Nicholson*, senior assistant state's attorney, for the appellee-appellant (state).

*Opinion*

NORCOTT, J. The dispositive issue in this appeal is whether the Appellate Court properly concluded that the trial court had abused its discretion in striking the

testimony of the defendant's expert witness.[1] The defendant, Maurice Billie, was convicted after a jury trial of two counts of manslaughter in the first degree as an accessory in violation of General Statutes §§ 53a-8[2] and 53a-55 (a) (1),[3] one count of commission of a class A, B or C felony with a firearm in violation of General Statutes § 53-202k,[4] and one count of carrying a firearm

[1] The specific questions certified in this appeal are: "1. Did the Appellate Court properly conclude that the trial court abused its discretion in striking the testimony of the defendant's expert witness regarding the substance known as 'illy' and its effects?

"2. If the answer to question one is yes, did the Appellate Court properly conclude that the trial court's error was harmless?" *State* v. *Billie*, 244 Conn. 933, 717 A.2d 231 (1998).

[2] General Statutes § 53a-8 provides: "(a) A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender.

"(b) A person who sells, delivers or provides any firearm, as defined in subdivision (19) of section 53a-3, to another person to engage in conduct which constitutes an offense knowing or under circumstances in which he should know that such other person intends to use such firearm in such conduct shall be criminally liable for such conduct and shall be prosecuted and punished as if he were the principal offender."

[3] General Statutes § 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person . . . or (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

[4] General Statutes § 53-202k provides: "Any person who commits any class A, B or C felony and in the commission of such felony uses, or is armed with and threatens the use of, or displays, or represents by his words or conduct that he possesses any firearm, as defined in section 53a-3, except an assault weapon, as defined in section 53-202a, shall be imprisoned for a term of five years, which shall not be suspended or reduced and shall be in addition and consecutive to any term of imprisonment imposed for conviction of such felony."

We note for clarification that the Appellate Court concluded that § 53-202k is a sentence enhancement provision, rather than a substantive offense. That court's treatment of the conviction under § 53-202k, however, is not now before this court.

without a permit in violation of General Statutes § 29-35.[5]

On appeal to the Appellate Court, the defendant claimed, inter alia, that the trial court improperly excluded certain testimony of the defendant's expert witness regarding behavioral changes caused by the use of a drug known as "illy"[6] that the defendant allegedly had been using on the days preceding and on the day of the crimes. *State* v. *Billie*, 47 Conn. App. 678,

[5] General Statutes § 29-35 provides: "(a) No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28. The provisions of this subsection shall not apply to the carrying of any pistol or revolver by any sheriff, parole officer or peace officer of this state, or sheriff, parole officer or peace officer of any other state while engaged in the pursuit of his official duties, or federal marshal or federal law enforcement agent, or to any member of the armed forces of the United States, as defined by section 27-103, or of this state, as defined by section 27-2, when on duty or going to or from duty, or to any member of any military organization when on parade or when going to or from any place of assembly, or to the transportation of pistols or revolvers as merchandise, or to any person carrying any pistol or revolver while contained in the package in which it was originally wrapped at the time of sale and while carrying the same from the place of sale to the purchaser's residence or place of business, or to any person removing his household goods or effects from one place to another, or to any person while carrying any such pistol or revolver from his place of residence or business to a place or person where or by whom such pistol or revolver is to be repaired or while returning to his place of residence or business after the same has been repaired, or to any person carrying a pistol or revolver in or through the state for the purpose of taking part in competitions or attending any meeting or exhibition of an organized collectors' group if such person is a bona fide resident of the United States having a permit or license to carry any firearm issued by the authority of any other state or subdivision of the United States, or to any person carrying a pistol or revolver to and from a testing range at the request of the issuing authority, or to any person carrying an antique pistol or revolver, as defined in section 29-33.

"(b) The holder of a permit issued pursuant to section 29-28 shall carry such permit on his person while carrying such pistol or revolver."

[6] "Illy is the street name for a drug consisting of a nonuniform mixture of phencyclidine (PCP), wood alcohol, methanol and formaldehyde." *State* v. *Billie*, 47 Conn. App. 678, 680 n.2, 707 A.2d 324 (1998).

679–80, 707 A.2d 324 (1998). The Appellate Court concluded that the trial court had abused its discretion in striking the testimony because the expert witness possessed a special knowledge of the drug not common to the average person, and his testimony would have assisted the jury in considering the issue of intoxication. Id., 684. Nevertheless, the Appellate Court concluded that the error was harmless because, even if the jury had believed the evidence of intoxication and had concluded that the defendant was so intoxicated that he could not form the specific intent to cause serious bodily harm pursuant to § 53a-55 (a) (1), the jury would have returned the same verdict of guilty of manslaughter in the first degree. Id., 686.[7] The court determined that the only distinction would be that the jury would have returned a verdict of guilty under subdivision (3) of § 53a-55 (a) instead of subdivision (1).[8] This certified appeal followed.

We conclude that the Appellate Court improperly determined that the trial court had abused its discretion in striking the testimony of the defendant's expert witness regarding the substance known as illy and its effects.[9] Accordingly, we affirm the judgment of the Appellate Court upholding the defendant's conviction, although we do so on different grounds.

The Appellate Court determined that the jury reasonably could have found the following facts. "On September 3, 1994, the defendant spent the evening drinking alcohol and smoking marijuana and illy. The next day, the defendant went to a cookout hosted by friends

---

[7] The Appellate Court vacated the defendant's conviction under § 53-202k, and remanded the case to the trial court to resentence the defendant to a total effective term of imprisonment of forty-five years. State v. Billie, supra, 47 Conn. App. 693.

[8] See footnote 3 of this opinion.

[9] Because we conclude that the trial court did not abuse its discretion, we need not reach, and therefore decline to address, the issue of harmless error.

where he and two friends smoked 'blunts.'[10] Later in the day, the defendant met his friend Andre Cinicola, who had a .40 caliber semiautomatic pistol in a shoulder holster. The defendant put on the holster and weapon and covered them with a leather jacket. Id., 680. The defendant decided to go to Congress Avenue in New Haven to purchase marijuana. The defendant drove a Mazda Miata and Cinicola rode in the passenger seat. While on Congress Avenue, the defendant and Cinicola were told "that members of a gang known as the Stickup Boys were nearby driving in a blue Mustang. The Stickup Boys were a gang that had recently engaged in a shooting and robbing spree in the inner city neighborhoods and housing projects in the New Haven area." Id. The defendant and Cinicola drove off in search of the blue Mustang.

Minutes later, the defendant came upon a blue Mustang with tinted windows, and a high speed chase ensued. "The defendant positioned the Miata alongside the driver's side window of the Mustang. Cinicola took the pistol from the defendant and fired [a total of] four shots at the Mustang. . . . One of the bullets struck the driver in the head, either killing or incapacitating him instantly and causing him to lose control of the car. The Mustang crashed into a nearby office building. The defendant also lost control of the Miata, which [then crashed into] a utility pole located seventy feet from the Mustang. The last portion of the chase and shootout was observed by three New Haven police officers who were [stationed] near the location of the car crashes." Id., 680–81.

The police officers found Cinicola on the sidewalk next to the Miata and the defendant trapped in the

---

[10] "A blunt typically is a small cigar that is hollowed out and filled with illy and smoked in the manner of a marijuana cigarette." *State* v. *Billie*, supra, 47 Conn. App. 680 n.3.

driver's seat. Two passengers in the backseat of the Mustang had minor injuries. The driver of the Mustang, George Goforth, had been killed by a single gunshot wound to the head. The front seat passenger, Roshwanda Crenshaw, was killed by a single gunshot wound to the chest. Ballistic testing confirmed that the bullet that killed Crenshaw was fired from Cinicola's gun. The bullet that killed Goforth passed through his skull and was never recovered. Id., 681.

"The murder weapon was recovered near the Miata and tests revealed Cinicola's left index fingerprint [on it]. . . . No weapon was found in the Mustang, and evidence later revealed that the defendant knew all four occupants and was a close friend of the two who were killed and that none of them was connected to the Stickup Boys. The tinted windows of the Mustang had prevented the defendant and Cinicola from identifying the occupants of the Mustang." Id., 682.

At trial, the defendant sought to introduce the expert testimony of Jeremy August, a psychiatrist, who was to testify regarding the behavioral effects caused by the use of the drug illy. Although August did testify regarding the behavioral effects of the components of illy—namely, methanol, phencyclidine (PCP), and formaldehyde—he stated that he could not testify as to the effects of these components in combination. August testified that illy was a nonuniform mixture of a variety of chemical substances, and that he had no knowledge as to the mixture ratio of the elements in the substance allegedly ingested by the defendant. He stated that "[i]lly is not like a prescription drug so . . . the clinical presentation depends on how much each of the individual ingredients you have and the extent to which you've been taking the substance." He also testified that he had neither examined the defendant nor reviewed his medical records, and that he could not testify as to the behavioral effects, if any, experienced by the defendant.

at the time that the crimes were committed. Indeed, August offered to review the defendant's medical records in order to "make a guess as to what was actually in the concoction that he [was] presented with." Defense counsel rejected this offer. Consequently, the trial court ordered that August's entire testimony be stricken as irrelevant.

The defendant presented ample evidence of his drug use and the effects therefrom through his own testimony and that of his companions, Terrence Williams, Judale Wynkoop and Joseph Threatt.[11] Williams and Wynkoop testified that they had ingested illy with the defendant during the evening hours preceding the shootings. Furthermore, the defendant testified that he had been a chronic user of illy for "four or five years." He also testified as to the behavioral changes he has experienced as a result of smoking illy.[12]

The defendant claims that the trial court abused its discretion by excluding the testimony of his expert witness. Specifically, the defendant claims that the exclusion of August's testimony improperly precluded him from presenting the defense of intoxication. We disagree.

---

[11] Threatt testified that he had been with the defendant "on numerous occasions" during which he and the defendant ingested illegal substances, including illy, and testified that September 4, 1994, was one of these occasions. Threatt further testified that illy causes effects on one's behavior: "Like makes you bug out, like see things." Specifically, he testified that illy caused behavioral changes in the defendant. "[Y]ou'd be in a conversation with him. He'd talk to you for a little while and then just walk away from you and just leave off and it seemed like he wasn't really with you."

[12] The defendant testified that "[t]he [e]ffect [of illy] was like—it felt like I was high than I usually be when I just smoked marijuana. Probably now if you ain't smoke it with me we wasn't on the same level of being high, you know. Like if you were sober and I was smoking illy I probably wouldn't be paying too much attention to what you are saying because it's like my hearing—I couldn't hear that good. I only could hear what I'm saying. It's like I was echoing inside my body. I couldn't hear too many people what they was talking to me about."

As a threshold matter, we set forth the standard by which we review the trial court's determinations concerning the exclusion of evidence. "The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Coleman*, 241 Conn. 784, 789, 699 A.2d 91 (1997). "Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Berger*, 249 Conn. 218, 230, 733 A.2d 156 (1999). Our review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did. *Timm* v. *Timm*, 195 Conn. 202, 210, 487 A.2d 191 (1985).

Concerning expert testimony specifically, we note that "the trial court has wide discretion in ruling on the admissibility of expert testimony and, unless that discretion has been abused or the ruling involves a clear misconception of the law, the trial court's decision will not be disturbed. *State* v. *Campbell*, 225 Conn. 650, 654, 626 A.2d 287 (1993); *State* v. *Kemp*, 199 Conn. 473, 476, 507 A.2d 1387 (1986); *State* v. *Palmer*, 196 Conn. 157, 166, 491 A.2d 1075 (1985); *Siladi* v. *McNamara*, 164 Conn. 510, 513, 325 A.2d 277 (1973); *Coffin* v. *Laskau*, 89 Conn. 325, 330, 94 A. 370 (1915)." *State* v. *Esposito*, 235 Conn. 802, 834, 670 A.2d 301 (1996). "Expert testimony should be admitted when: (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues."

(Internal quotation marks omitted.) *State* v. *Correa*, 241 Conn. 322, 354, 696 A.2d 944 (1997).

Our analysis is supported by a review of the well established rules of evidence. "Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter. . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative." (Internal quotation marks omitted.) *State* v. *Coleman*, supra, 241 Conn. 788–89.

We conclude that the trial court was within its discretion in determining that August's testimony regarding the behavioral effects of using illy did not satisfy the test articulated in *State* v. *Correa*, supra, 241 Conn. 354. "The defendant's rights to confront and cross-examine witnesses and to present a defense do not give him the right to have admitted any evidence he chooses." *State* v. *Negron*, 221 Conn. 315, 328, 603 A.2d 1138 (1992). In the present case, the expert's testimony was not based upon an examination of the defendant himself or a review of his pertinent medical records, nor was it premised upon an examination of the substance allegedly ingested by the defendant. Additionally, the testimony was not based upon an analysis of the behavioral effects of illy in general. Instead, August's testimony was limited to the behavioral effects of methanol, PCP and formaldehyde, separate substances which, as August admitted, might have very different effects when

combined. Thus, the trial court reasonably determined that August's testimony was irrelevant as to both the defendant's condition immediately following the incident and the general effects of illy. Consequently, August's proposed testimony did not offer any expertise directly applicable to a matter at issue in the present case. His testimony, therefore, would not be helpful to the jury in reaching its verdict. Thus, the trial court correctly excluded his testimony.

After a careful review of the record we conclude that, despite his claim to the contrary, the defendant was not precluded from presenting evidence of his defense of intoxication. He was permitted to pursue his defense of intoxication by means of his own testimony and that of his other witnesses. Accordingly, we conclude that the trial court did not abuse its discretion by excluding the testimony of August and, therefore, we uphold the defendant's conviction.

The judgment of the Appellate Court is affirmed.

In this opinion CALLAHAN, C. J., and BORDEN and MCDONALD, Js., concurred.

BERDON, J., dissenting. The trial court in the present case refused to permit the jurors to consider expert testimony that was necessary in order to enable them to evaluate the sole defense that the defendant had raised. In my view, this ruling constituted an abuse of discretion for two reasons: (1) it contradicted a recent opinion rendered by this court and (2) it violated the defendant's fundamental right under the federal constitution to present a defense. I would reverse the defendant's conviction and order a new trial.

In the present case, the defendant, Maurice Billie, was charged with committing a number of serious crimes.[1] His sole defense was that he had been unable

---

[1] See footnotes 2 through 5 of the majority opinion.

to form the requisite mens rea because he was, at all relevant times, under the influence of a substance known as "illy," which is a mixture of phencyclidine (PCP), wood alcohol, methanol and formaldehyde. In order to establish this defense, the defendant wished to rely upon the expert testimony of Jeremy August, a psychiatrist. August would have testified to the behavioral effects of each of the constituent ingredients of illy. He also would have testified that it was not possible to assess the precise effect of illy upon the defendant, for the simple reason that it was not possible to determine the precise ratio among the various ingredients contained in the particular mixture of illy that the defendant had ingested. The trial court excluded all of August's testimony on the ground that it was irrelevant. I agree with the Appellate Court's conclusion that this ruling constituted an abuse of discretion. *State* v. *Billie*, 47 Conn. App. 678, 684, 707 A.2d 324 (1998).

"Expert testimony should be admitted when: (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues. . . ." (Internal quotation marks omitted.) *State* v. *Correa*, 241 Conn. 322, 353–54, 696 A.2d 944 (1997). As the Appellate Court cogently explained, the psychiatric expert in the present case "possessed a special knowledge of illy, not common to the average person,[2] and his testimony would have

---

[2] While serving as a member of the Appellate Court, the author of the majority opinion in the present case signed his name to the following proposition: "It cannot be assumed that information relating to the mannerisms and tendencies of intoxicated [persons] is within the common knowledge of the average juror. *State* v. *Holeman*, 18 Conn. App. 175, 179, 556 A.2d 1052 (1989); see also *State* v. *Grayton*, 163 Conn. 104, 111, 302 A.2d 246, cert. denied, 409 U.S. 1045, 93 S. Ct. 542, 34 L. Ed. 2d 495 (1972)." *State* v. *Kwaak*, 21 Conn. App. 138, 156–57, 572 A.2d 1015, cert. denied, 215 Conn. 811, 576 A.2d 540 (1990).

aided the jury in considering the issue of intoxication. The relevant issue was whether the defendant was under the influence of illy and whether the intoxication affected his capacity to form a specific intent. Testimony concerning the composition of illy and its effect would have aided the jury in considering those issues." *State* v. *Billie,* supra, 47 Conn. App. 684.

The mantra of the majority opinion is that "the trial court has wide discretion in ruling on the admissibility of expert testimony . . . ." (Internal quotation marks omitted.) This is true. Nevertheless, "[d]iscretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. In a plain case, this discretion has no office to perform, and its exercise is limited to doubtful cases, where an impartial mind hesitates. . . . *State* v. *Onofrio,* 179 Conn. 23, 29, 425 A.2d 560 (1979). Discretion does not mean, as the majority seems to believe, an untrammeled right to do as the trial court wishes. See *United States* v. *Brien,* 59 F.3d 274, 277 (1st Cir.), cert. denied, 516 U.S. 953, 116 S. Ct. 401, 133 L. Ed. 2d 320 (1995) (trial court's discretion is not carte blanche); *State* v. *Chapple,* [135 Ariz. 281, 296, 660 P.2d 1208 (1983)] (discretion does not mean that the court is free to reach any conclusion it wishes). If discretion were as unbridled as the majority seems to believe, a criminal defendant would be playing Russian roulette whenever his case was assigned to a judge: justice would depend upon which chambers he happened to draw. This is not justice. Rather, a trial court's discretion must be based upon a reasoned consideration of the unique circumstances of each particular case." (Internal quotation marks omitted.) *State* v. *McClendon,* 248 Conn. 572, 609–10, 730 A.2d 1107 (1999) (*Berdon, J.,* dissenting). With this analytic framework in mind, I am unable to comprehend

the majority's determination that the trial court in the present case did not abuse its discretion.

Just a few years ago, a unanimous panel of this court—which included the author of the majority opinion in the present case—held that the trial court had abused its discretion by "exclud[ing] the testimony of a defense expert regarding the adverse effects of cocaine on the cognitive abilities of a person who ingests the drug . . . ." *State* v. *Barletta,* 238 Conn. 313, 316, 680 A.2d 1284 (1996). The result that my colleagues in the majority have reached in the present case cannot be reconciled with *Barletta.* In fact, the trial court's ruling in the present case is more egregious than the ruling that the *Barletta* court found to be an abuse of discretion.

To begin with, the expert testimony in *Barletta* was highly speculative.[3] In the present case, the only uncertainty pertained to the ratio among the ingredients contained in the mixture of illy that the defendant had ingested. It is apparent that August could have informed the jury about the following two matters: (1) the behavioral effects of the individual drugs that compose illy; and (2) the range of possible reactions to differing batches of illy.[4] Significantly, the *Barletta* court was

[3] The defendant in *Barletta* sought to elicit testimony that an eyewitness' observations were the result of hallucinations. The defense expert was unable to say whether "a person under the influence of cocaine is more likely than not to experience the type of complex visual hallucinations that would affect the reliability of his or her observations . . . ." *State* v. *Barletta,* supra, 238 Conn. 321.

[4] The proper inquiry is not whether August would have provided the best of all possible testimony. Instead, the question is simply whether the jury would have been better able to evaluate the defendant's sole defense—that is, his claim that he was unable to form the requisite mens rea—if it had been permitted to hear the testimony of a psychiatric expert. Because August knew about the behavioral effects of the drugs that compose illy and the jury probably did not, this latter question must be answered in the affirmative. "A party is not required to offer such proof of a fact that it excludes all other hypotheses; it is sufficient if the evidence tends to make the existence or nonexistence of any other fact more probable or less probable than it would be without such evidence. *State* v. *Briggs,* [179 Conn. 328, 333, 426 A.2d

untroubled by the state's argument that "cocaine affects people differently, [and the expert] could not testify with specificity how [the eyewitness'] cognitive abilities were likely to have been impaired . . . ." Id., 319. If that argument did not suffice to insulate the trial court's ruling in *Barletta*, it cannot do so in the present case.[5]

Moreover, *Barletta* involved expert psychiatric testimony that was offered in order to impeach the credibility of a *witness* to a crime. Id., 318. In the present case, August would have testified to the *defendant's* state of mind. If the jurors had been permitted to consider August's testimony, they well may have reached the following conclusions: (1) the defendant did not possess the requisite mens rea; (2) the state had failed to establish a necessary element; and (3) the state had failed to prove the defendant's guilt beyond a reasonable doubt.[6]

298 (1979), cert. denied, 447 U.S. 912, 100 S. Ct. 3000, 64 L. Ed. 2d 862 (1980)] . . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative. *State* v. *Miller*, [202 Conn. 463, 482, 522 A.2d 249 (1987)]; *State* v. *Morrill*, 197 Conn. 507, 548, 498 A.2d 76 (1985). . . . C. Tait & J. LaPlante, [Connecticut Evidence (2d Ed. 1988)] § 8.1.1, pp. 225–26. . . . *State* v. *Prioleau*, [235 Conn. 274, 305–306, 664 A.2d 743 (1995)]." (Internal quotation marks omitted.) *State* v. *Kiser*, 43 Conn. App. 339, 362, 683 A.2d 1021, cert. denied, 239 Conn. 945, 686 A.2d 122 (1996), cert. denied, 520 U.S. 1190, 117 S. Ct. 1478, 137 L. Ed. 2d 690 (1997); see *State* v. *Willis*, 221 Conn. 518, 522, 605 A.2d 1359 (1992) ("[e]vidence is admitted, not because it is shown to be competent, but because it is not shown to be incompetent" [internal quotation marks omitted]).

[5] The majority emphasizes August's testimony that "[i]lly is not like a prescription drug, so . . . the clinical presentation depends on how much [of] each of the individual ingredients you have . . . ." (Internal quotation marks omitted.) If we are to be swayed by this fact, then we must adopt the following bright line rule: juries may never have the benefit of expert psychiatric testimony in cases involving the effect of substances prepared by black market apothecaries. Both common sense and our recent opinion in *Barletta* compel us to reject this rule.

[6] It is for this reason that the trial court's abuse of discretion in the present case could not possibly have been harmless.

Finally, the majority today has disregarded the defendant's fundamental right under the sixth amendment to the federal constitution to present a defense. "In order to comport with the constitutional standards embodied in the confrontation clause, the trial court must allow a defendant to expose to the jury facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. *Davis* v. *Alaska*, [415 U.S. 308, 318, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974)]. . . . *State* v. *Beliveau*, 237 Conn. 576, 585, 678 A.2d 924 (1996); *State* v. *Barnes*, 232 Conn. 740, 746, 657 A.2d 611 (1995). Thus, [w]hen defense evidence is excluded, such exclusion may give rise to a claim of denial of the right to present a defense. *Chambers* v. *Mississippi*, [410 U.S. 284, 289–90, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973)]. *State* v. *Christiano*, 228 Conn. 456, 474, 637 A.2d 382, cert. denied, 513 U.S. 821, 111 S. Ct. 83, 130 L. Ed. 2d 36 (1994); see also *State* v. *Cavell*, 235 Conn. 711, 720, 670 A.2d 261 (1996) (under particular circumstances, the unjustified exclusion of a witness' testimony can amount to a deprivation of the defendant's right to present a defense)." (Internal quotation marks omitted.) *State* v. *Barletta*, supra, 238 Conn. 322. In the present case, the defendant's sole defense was that he was unable to form the requisite mens rea. By excluding the testimony of the psychiatric expert witness, the court deprived the defendant of the only credible means by which he could explain this defense to the jury.[7] Without the benefit of this testimony, the jury was unable to evaluate the case mounted by the defense in an informed manner. For these reasons, the trial court's

---

[7] The majority correctly observes that the defendant "testified as to the behavioral changes he has experienced as a result of smoking illy." On the subject of the clinical presentation of a narcotic substance, it is obvious that the jury would be more likely to credit the testimony of an expert in psychiatry than it would be to credit the testimony of a defendant eager to obtain an acquittal.

ruling deprived the defendant of his fundamental right under the constitution to present a defense.

Accordingly, I dissent.

