******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ANTOINE OSBOURNE
(AC 36182)

Prescott, Mullins and West, Js.

*Argued September 8, 2015—officially released January 12, 2016*

(Appeal from Superior Court, judicial district of
Hartford, Vitale, J.)

*Jon L. Schoenhorn*, with whom, on the brief, was
*Alexandra T. Gaudio*, legal intern, for the appellant
(defendant).

*Rocco A. Chiarenza*, assistant state's attorney, with
whom, on the brief, were *Gail P. Hardy*, state's attor-
ney, and *Anthony Bochicchio*, senior assistant state's
attorney, for the appellee (state).

*Opinion*

WEST, J. The defendant, Antoine Osbourne, appeals from the judgment of conviction, rendered after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (5). On appeal, the defendant claims that the trial court improperly admitted into evidence (1) photographs of the crime scene and of the victim's clothing, and (2) a hearsay statement of the victim. We affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. On October 5, 2011, at approximately 1 a.m., Huon Howard, the owner of the International Café in Hartford, Glen Spyke, and employee, and six to eight others, including Richard Coombs, were standing in the rear parking lot of the café as the café was preparing to close. Howard, Spyke, and Coombs observed the defendant and two other men enter the rear lot through the back gate. The victim, Durie "Duey" Hemans, was standing alone in the rear patio area. Howard and Spyke witnessed the defendant approach the victim and engage him in a verbal argument, which they attempted to deescalate.[1]

Subsequent to the argument, the defendant shot the victim in the leg. Initially thereafter, the victim was still, but upon realizing he had been shot, he attempted to move inside the café. As the victim tried walking into the café, the defendant shot him two additional times. The victim then proceeded to enter the café and make his way into the women's restroom. The victim eventually was assisted by others into a vehicle and driven to the hospital. While at the hospital, the victim gave a statement to the police regarding the shooting. On the basis of their investigation, the police arrested and charged the defendant.

The jury found the defendant guilty of assault in the first degree. Prior to sentencing, the defendant filed postverdict motions for judgment of acquittal and a new trial, reiterating certain objections made during the trial, which the court denied. The court rendered judgment in accordance with the verdict and sentenced the defendant to fifteen years of incarceration, followed by five years of special parole. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly admitted photographs of blood found at the crime scene and of the victim's blood soaked clothing, arguing that the photographs were immaterial and prejudicial. Specifically, the defendant contends that (A) the photographs were not relevant because he was not contesting that the victim was shot or where the victim went after the shooting, and (B) the limited probative value of the photographs was outweighed by their prejudicial effect

because the photographs improperly inflamed the emotions of the jury.

The following additional facts are relevant to our disposition of the defendant's claim. During the state's case-in-chief, the prosecutor offered into evidence a photograph that depicted blood trails leading to the back door of the café. The defendant objected to the admission of the photograph, and the court excused the jury. Outside of the presence of the jury, Valentine Olabisi, an officer with the Hartford Police Department, identified four additional photographs depicting, respectively, a pool of blood near the front door of the café, a blood trail leading toward the bathroom, another blood trail inside the café, and a pool of blood in the bathroom.

The defendant argued that the only purpose for admitting these photographs would be to inflame the jury, appeal to its emotions, and create a sense of sympathy for the victim, thus prejudicing the defendant. Furthermore, the defendant contended that such prejudicial effect outweighed any probative value of the photographs and that the fact that the victim was shot was not a contested matter. He argued that if the court was inclined to admit some of the photographs, admitting all of them was redundant. The state argued that the photographs were corroborative of the testimony of its later witnesses regarding where the victim was shot and who shot him, and also supported an inference that the shooter intended to shoot the victim. Moreover, the state indicated that all of the jurors had been advised, during jury selection, that this was a case involving a shooting and that it would be logical for the jurors to expect that they would see photographs containing blood.

The court examined the photographs at issue and found that none of the photographs was inflammatory or needlessly gruesome, and that the photographs were relevant to the extent and painfulness of the alleged victim's injuries. The court then concluded that the photographs had a logical tendency to aid the jury in determining the material facts in issue and that the photographs were more probative than prejudicial. Following the admission of the photographs into evidence, the court gave the jury a limiting instruction in which it stated, in part, "[y]ou must not allow emotion or sympathy to play a role in your decision and you must not allow the photographs to affect you in that way."

Later in the trial, during the testimony of Jeremy Ball, a detective with the Hartford Police Department, the defendant objected to the state's attempted admission of photographs of the victim's blood soaked clothing and of clothing that depicted the location of the bullet holes. The court conducted another hearing outside of the jury's presence. During the hearing, Ball identified the photographs as depicting the victim's underpants,

an apparent bullet hole in the victim's underpants, and the front and rear of the victim's jeans. The defendant asserted that the photographs were upsetting and gory, depicted copious amounts of blood, and were both inflammatory and immaterial to any disputed issue. The state argued that it was required to prove the element of a physical injury and that the photographs were probative of both the victim's actual injuries and of the defendant's intent to inflict physical injury.

Ultimately, the court did not "find anything remotely inflammatory" about any of the photographs. Subsequent to the admission of the photographs, the jury was again instructed in accordance with the previous limiting instruction. During the final charge to the jury, the court reiterated that sympathy was not to play a role in its deliberations. The court instructed the jury to pay close attention to its instructions, which included, in part, that the jury "must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy." The court subsequently reiterated twice that the jury should not allow sympathy or sentiment to affect its verdict.

A

The defendant argues that the court improperly admitted the photographs at issue because, at trial, he was not contesting the fact that the victim was shot or where he went after the shooting, only the identity of the shooter, therefore, the photographs were not relevant to any disputed issue in the case.

We begin our analysis by setting forth the applicable standard of review and legal principles. "Our standard of review for evidentiary matters allows the trial court great leeway in deciding the admissibility of evidence. The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done. . . . The exercise of such discretion is not to be disturbed unless it has been abused or the error is clear and involves a misconception of the law." (Internal quotation marks omitted.) *Bunting* v. *Bunting*, 60 Conn. App. 665, 670, 760 A.2d 989 (2000). "[S]ound discretion has long meant a discretion that is not exercised arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result." (Internal quotation marks omitted.) *State* v. *Williams*, 195 Conn. 1, 8, 485 A.2d 570 (1985). Additionally, "[e]very reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Rolon*, 257 Conn. 156, 173, 777 A.2d 604 (2001).

We note that "[e]vidence is relevant if it has any tendency to make the existence of any fact that is mate-

rial to the determination of the proceeding more probable or less probable than it would be without the evidence. . . . Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree, [as] long as it is not prejudicial . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Bonner*, 290 Conn. 468, 496–97, 964 A.2d 73 (2009). Here, the photographs were relevant because they supported the fact that the victim suffered a physical injury within the statutorily defined meaning of that term, and that the defendant had the requisite intent to inflict physical injury.

Furthermore, our Supreme Court has rejected similar arguments that the relevance of a piece of evidence is diminished because a defendant does not explicitly dispute a particular element of a crime. See *State* v. *Johnson*, 190 Conn. 541, 550, 461 A.2d 981 (1983). In *Johnson*, the court "reject[ed] the defendant's assertion that the elements of intent and motive were not at issue . . . because the defendant's claim at trial was that he was not the individual who committed the crime." Id., 550. The court in *Johnson* noted that "[t]he defendant did not offer an alibi defense [and therefore] [b]y his plea of not guilty the defendant put in issue every element of the crime charged." Id. The court in *Johnson* further stated that "[t]he burden was on the state to prove each element beyond a reasonable doubt . . . [and] the state was entitled to introduce such legally competent evidence." (Citations omitted.) Id. Accordingly, although the defendant in the present case did not dispute that the victim had been shot, his plea of not guilty put in issue *every* element of the crime charged, and the state had the burden of proving each element beyond a reasonable doubt. See id.

General Statutes § 53a-59 (a) provides in relevant part: "[a] person is guilty of assault in the first degree when . . . (5) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of the discharge of a firearm." Accordingly, one of the elements that the state was required to prove under § 53a-59 (a) (5) was that the defendant caused physical injury to the victim. General Statutes § 53a-3 (3) defines "physical injury" as "impairment of physical condition or pain." Here, the court acted within its discretion in determining that the photographs depicting the victim's blood loss at the scene of the crime and the victim's blood soaked clothing were relevant to establish the "painfulness of the victim's injuries," an issue that went to the element of whether

the state had proven a "physical injury" for the purpose of § 53a-59 (a) (5) as that term has been defined by § 53a-3 (3). Furthermore, the photographs were relevant as to whether the defendant possessed the requisite intent of the crime charged. *State* v. *James*, 54 Conn. App. 26, 31, 734 A.2d 1012 ("[a] person's intent may be inferred from his conduct, as well as the surrounding circumstances"), cert. denied, 251 Conn. 903, 738 A.2d 1092 (1999).

The defendant also argues that because he did not object to the introduction of hospital records detailing the gunshot wounds of the victim, the photographs were cumulative evidence of physical injury, and, therefore, unnecessary and should not have been admitted. This argument fails because "[t]here is no requirement in this state that a potentially inflammatory photograph be essential to the state's case in order for it to be admissible; rather, the test for determining the admissibility of the challenged evidence is relevancy and not necessity." (Internal quotation marks omitted.) *State* v. *Williams*, 227 Conn. 101, 111, 629 A.2d 402 (1993). Although the state was able to offer the victim's hospital records, it was not precluded from introducing the photographs into evidence. See id., 111–12. ("[t]he prosecution, with its burden of establishing guilt beyond a reasonable doubt, is not to be denied the right to prove every essential element of the crime by the most convincing evidence it is able to produce" [internal quotation marks omitted]). Therefore, we determine that the court did not abuse its discretion in finding the photographs to be relevant.

B

Additionally, the defendant argues in support of his claim that the photographs were improperly admitted that they were more prejudicial than probative. Specifically, the defendant contends that the photographs improperly inflamed the emotions of the jury.

Section 4-3 of the Connecticut Code of Evidence provides: "Relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice or surprise, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." "A potentially inflammatory photograph may be admitted if the court, in its discretion, determines that the probative value of the photograph outweighs the prejudicial effect it might have on the jury." *State* v. *Williams*, supra, 227 Conn. 111. We note that "[t]he principles governing the admission of potentially inflammatory photographic evidence are clear. . . . [W]e adhere to the general rule that photographs which have a reasonable tendency to prove or disprove a material fact in issue or shed some light upon some material inquiry are not rendered inadmissible simply because they may be characterized as gruesome. . . . When,

however, an initial determination is made by the trial court that such photographs may have the tendency to prejudice or inflame the jury, the admissibility of such evidence is dependent upon the trial court's determination as to whether their value as evidence outweighs their possible prejudicial effect. . . . Since the trial court exercises its broad discretion in such circumstances, its determination will not be disturbed on appeal unless a clear abuse of that discretion is shown." (Internal quotation marks omitted.) *State* v. *Walker*, 206 Conn. 300, 314–15, 537 A.2d 1021 (1988).

Here, the court determined that the photographs depicting the pools and trails of the victim's blood were not more prejudicial than probative because they could "depict the extent and painfulness of the alleged victim's injuries" and demonstrated the "character, location and course of injury to prove not only that the victim was shot but the manner in which it had occurred." With respect to the photographs showing the victim's blood soaked clothing, the court found that there was nothing inflammatory about the images.

As noted previously, the photographs were probative not only of the element of physical injury, but also of intent. "A person's intent may be inferred from his conduct, as well as the surrounding circumstances"; *State* v. *James*, supra, 54 Conn. App. 31; and, in the present case, the crime charged required intent to cause physical injury to another person be proven. See General Statutes § 53a-59 (a) (5). The photographs depicting the pools of blood and the victim's blood soaked clothing were probative of the defendant's intent to cause physical injury. Furthermore, the photographs at issue in this case depicted pools and trails of blood and the victim's blood soaked clothing; none of the photographs at issue depicted the victim himself. In this case, we conclude that the court did not abuse its discretion in determining that the probative value of the photographs outweighed any prejudicial effect.[2]

Additionally, the court gave limiting instructions to the jury prior to the introduction of both groups of photographs by the state, and again during its final charge, thus, further minimizing any potential of undue prejudice. The court cautioned the jury not to allow its decision to be influenced by any emotion or sympathy evoked from viewing the photographs. Therefore, in this case, although the photographs admitted into evidence depicted blood found at the scene and the victim's bloody clothing, the trial court's determination that they were more probative than prejudicial does not constitute an abuse of discretion. See *State* v. *Epps*, 105 Conn. App. 84, 96, 936 A.2d 701 (2007), cert. denied, 286 Conn. 903, 943 A.2d 1102 (2008)

In sum, on the basis of our review of the record, the defendant has failed to establish that the trial court decided to admit the subject photographs so arbitrarily

as to vitiate logic, or decided to admit the photographs based on improper or irrelevant factors; see *State* v. *Jacobson*, 283 Conn. 618, 627, 930 A.2d 628 (2007); and, thus, we cannot conclude that the court abused its discretion in admitting the subject photographs.

## II

Next, the defendant claims that the court improperly admitted part of Spyke's prior written statement that he gave to the police. Specifically, he argues that the court improperly admitted "the key portion dealing with whether the defendant and Hemans were involved in an argument before the shooting" because it was not inconsistent with Spyke's testimony at trial.[3] The defendant further argues that "whether or not Spyke heard what he perceived to be an argument is wholly disconnected from any observations about a gun," and that "the hearsay regarding the argument did not even follow sequentially in the document so as to suggest the need for context or 'completeness.'" This argument, however, reveals that the defendant misconstrues the court's ruling in admitting portions of the written statement.

The following additional facts are relevant to our disposition of the defendant's claim. During the trial, on direct examination by the state, Spyke testified as to what he observed and heard outside of the café on October 5, 2011. Spyke testified that he saw the victim outside the café and heard "a little shouting" or "[a] little argument" between the victim and the defendant, but that he did not hear what was said. The state questioned Spyke regarding what he observed relating to the shooting, and Spyke testified that after the argument he heard a "pop" sound. Spyke further testified that he saw the defendant with his hand up, but that he did not see him with a gun. When the state questioned him about whether he recalled telling the police that he saw a gun in the defendant's hand, Spyke maintained that he did not see a gun, but merely assumed that the defendant had a gun based upon the positioning of his hand. Spyke also denied that he told the police that the gun was a dark color. The state claimed that Spyke was testifying inconsistently with his sworn police statement, and attempted to offer the entire written statement as a prior inconsistent statement under *Whelan* for substantive purposes. See *State* v. *Whelan*, 200 Conn. 743, 752–54, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986). Spyke testified, however: "I'm saying the same thing I'm telling, that's what's in the statement." Defense counsel objected to the admissibility of the statement in its entirety, claiming that only the portions of the statement that Spyke was being questioned about were admissible. The court held a hearing outside the jury's presence during which the state argued that it was a short, two page statement, it did not mention any prior bad acts or prejudicial

material, and the entire statement placed the events into context. The court then stated that only certain portions of the statement should be admitted.

The state then provided a redacted copy of Spyke's statement for admission under *Whelan*. The redacted written statement provided in relevant part: "[The defendant] said something like '[w]hat's going on' to Dewy.[4] Dewy said something like 'I will check you later.' Or something like that. [The defendant] and Dewy were shouting at each other at that point so I am not sure what else they were saying. . . . [The defendant] had his right hand down by his right leg and then all of a sudden he tilted his hand up and I saw that [the defendant] was holding a gun in his right hand. The gun was dark colored. I then saw [the defendant] pick up his right hand with the gun and pointed it toward Dewy. [The defendant] then shot Dewy. I heard about three shots."[5]

The court noted that the first paragraph offered by the state contained the statement: "[The defendant] said something like '[w]hat's going on' to Dewy. Dewy said something like 'I will check you later,' " and that this statement should be admitted. The defendant objected on the grounds that this portion of the statement was consistent with Spyke's testimony. The state argued that it was inconsistent because Spyke had testified that he could not hear what the defendant and the victim had been saying to one another. The court ruled that this portion was inconsistent with Spyke's testimony and noted that the defendant could cross-examine Spyke on the scope of the inconsistency. Accordingly, the statement was admitted as substantive evidence pursuant to *Whelan*.

The court also admitted the next two sentences immediately following, which read, "[o]r something like that. [The defendant] and Dewy were shouting at each other at that point so I am not sure what else they were saying." The court admitted these sentences in order to place the first portion of the statement into context pursuant to *State* v. *Arthur S.*, 109 Conn. App. 135, 141, 950 A.2d 615 (holding consistent portions of statements that trial court admitted were necessary to place inconsistent statements into context), cert. denied, 289 Conn. 925, 958 A.2d 153 (2008).

In the state's closing argument, the prosecutor argued that the proof of an argument between the defendant and the victim was probative of the element of intent, and that, although motive did not need to be proven, the jury could find that evidence of such an argument provided a motive. Defense counsel, in her closing argument, reminded the jury that there was no consistent testimony regarding any alleged argument between the defendant and the victim. In the state's rebuttal, the prosecutor argued that the redacted copy of Spyke's statement to police was proof that an argument

occurred between the defendant and the victim.

"As a threshold matter, we set forth the standard by which we review the trial court's determinations concerning the exclusion of evidence." *State* v. *Billie*, 250 Conn. 172, 180, 738 A.2d 586 (1999). "[T]he admissibility of evidence, including the admissibility of a prior inconsistent statement pursuant to *Whelan*, is a matter within the . . . discretion of the trial court. . . . [T]he trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done. . . . On review by this court, therefore, every reasonable presumption should be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *State* v. *Simpson*, 286 Conn. 634, 643, 945 A.2d 449 (2008).

"It is well settled that, [a]n out-of-court statement offered to prove the truth of the matter asserted is hearsay and is generally inadmissible unless an exception to the general rule applies. . . . In *State* v. *Whelan*, supra, 200 Conn. 743, however, [our Supreme Court] adopted a hearsay exception allowing the substantive use of prior written inconsistent statements, signed by the declarant, who has personal knowledge of the facts stated, when the declarant testifies at trial and is subject to cross-examination. This rule has also been codified in § 8-5 (1) of the Connecticut Code of Evidence, which incorporates all of the developments and clarifications of the *Whelan* rule that have occurred since *Whelan* was decided." (Citation omitted; internal quotation marks omitted.) *State* v. *Simpson*, supra, 286 Conn. 641–42.

Our review of the court's admission of evidence "is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." *State* v. *Billie*, supra, 250 Conn. 180. "This standard does not vary for the court's determination of whether two statements are inconsistent. . . . Whether there are inconsistencies between the two statements is properly a matter for the trial court. . . . In determining whether an inconsistency exists, the testimony of a witness as a whole, or the whole impression or effect of what has been said, must be examined." (Citation omitted; internal quotation marks omitted.) *State* v. *Prutting*, 40 Conn. App. 151, 157, 669 A.2d 1228, cert. denied, 236 Conn. 922, 974 A.2d 1328 (1996).

The defendant appears to argue that the first portion of Spyke's written statement to the police, which the court admitted into evidence as a *Whelan* statement, was not inconsistent with his testimony at trial. The court admitted the portion of Spyke's written statement providing, "[the defendant] said something like '[w]hat's going on' to Dewy. Dewy said something like 'I will check you later,'" as a *Whelan* statement. The court based this decision on the fact that when Spyke was questioned at trial about whether he heard what the

defendant and Dewy were arguing about, he testified, "[n]o, I couldn't get the words." Therefore, it was within the court's discretion to determine that the first portion of Spyke's written statement was inconsistent with his testimony at trial. We conclude that the court did not abuse its discretion in admitting the first portion of the written statement as a *Whelan* statement.

The defendant also appears to be contending that the court admitted both portions of the statement regarding the argument in order to provide context for the portion describing the defendant raising a gun. The basis for the court's decision to admit the second portion of the statement regarding the argument, however, was to provide context for the first portion of the statement, which the court admitted under *Whelan* as a prior inconsistent statement, as discussed previously. In order to place that inconsistency in context, the court admitted the second portion of Spyke's prior written statement regarding the argument, namely that, "[the defendant] and Dewy were shouting at each other at that point so I am not sure what else they were saying." Although the court did admit the portion of the written statement regarding the gun as a prior inconsistent statement pursuant to *Whelan*, that was unrelated to the admission of the portions regarding the argument.

"In general, the court should seek to avoid admitting evidence that is likely to confuse or mislead the jury. . . . The principle of affording the fact finder the proper context in which to consider statements is codified in Connecticut Code of Evidence § 1-5 (a), which provides that '[w]hen a statement is introduced by a party, the court may, and upon request shall, require the proponent at that time to introduce any other part of the statement, whether or not otherwise admissible, that the court determines, considering the context of the first part of the statement, ought in fairness to be considered contemporaneously with it.' This type of determination is largely dependent on the unique circumstances in each case and, as with evidentiary issues in general, is best left to the sound discretion of the trial court." (Citation omitted.) *State* v. *Arthur S.*, supra, 109 Conn. App. 140. Here, after admitting the first portion of the statement regarding the argument as a prior inconsistent statement, the court determined that the second portion was necessary to provide context for the first.

In this case, the court thoughtfully and carefully reviewed, line by line, the entire statement that the state sought to introduce as an exhibit. The court heard argument from both sides as to whether each line in question should be admitted. The court then admitted a redacted version of the statement, including both consistent and inconsistent portions of the statement. It explained its reasoning in admitting the consistent portion in terms of establishing context for one of the

inconsistent portions. See id., 141 (holding that trial court exercised sound discretion when it took similar precautions). Given the court's careful consideration of the statements at issue, the defendant has failed to establish that the court decided to admit the consistent portion of the statement regarding the argument so arbitrarily as to vitiate logic, or decided to admit the consistent portion based on improper or irrelevant factors; see *State* v. *Jacobson*, supra, 283 Conn. 627; and, thus, we cannot conclude that the court abused its discretion in admitting the statement. In sum, the trial court did not abuse its discretion in admitting the first portion of the written statement as a prior inconsistent statement under *Whelan* and the second portion as a consistent statement to provide context to the first. Accordingly, the defendant's claims fail.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The victim, however, denied involvement in any argument, maintained that he was minding his own business, and described the encounter as a "discussion" and an "exchange of words."

[2] See, e.g., *State* v. *Haskins*, 188 Conn. 432, 452–53, 450 A.2d 828 (1982) (holding trial court did not abuse discretion in admitting six color photographs of assault victim's injuries by finding photographs were probative of "character, location and course of the shotgun pellets or bullets"); *State* v. *Schaffer*, 168 Conn. 309, 312–313, 362 A.2d 893 (1975) (holding trial court did not abuse discretion in admitting black and white photograph depicting body of murder victim by finding it was probative of relationship of body to road and to illustrate conditions described in testimony of witnesses); *State* v. *Marshall*, 166 Conn. 593, 602, 353 A.2d 756 (1974) (holding trial court did not abuse discretion in admitting several additional photographs of murder victim's body and pool of blood next to deceased even when defendant claimed photographs were superfluous, and where only difference between additional photographs and other photographs already admitted was that additional photographs depicted victim's eyeglasses and boots not shown in previously admitted photographs); *State* v. *Williams*, 137 Conn. App. 250, 257, 47 A.3d 914 (where charge was evading responsibility for motor vehicle accident, held that trial court properly admitted color photograph of victim's body that depicted victim "lying on the roadway, with his head split open and blood and brain matter protruding from his cranium"), cert. denied, 307 Conn. 921, 54 A.3d 182 (2012); *State* v. *Howard*, 88 Conn. App. 404, 427–28, 870 A.2d 8 (holding that court did not abuse discretion in admitting sixteen autopsy photographs of murder victims), cert. denied, 275 Conn. 917, 883 A.2d 1250 (2005).

[3] The defendant does not specifically identify the language of the written statement that he classifies as the "key portion" of the statement.

[4] Although the victim's nickname is spelled "Duey" in the trial transcript, his nickname was spelled "Dewy" in Spyke's statement to police.

[5] The court admitted the last five sentences of the redacted written statement quoted herein on the basis that they were inconsistent with Spyke's testimony at trial that he did not observe the defendant holding a gun. The admission of this portion, however, is not at issue in this appeal.