HELEN WITTY, TRUSTEE, ET AL. *v.* PLANNING AND
ZONING COMMISSION OF THE TOWN
OF HARTLAND ET AL.
(AC 20923)

Landau, Mihalakos and Flynn, Js.

Argued June 8—officially released October 23, 2001

*Timothy Brignole*, for the appellants (plaintiffs).

*Mary E. R. Bartholic*, with whom were *Brian J. Comerford*, assistant attorney general, and, on the brief, *Thomas W. Witherington* and *Richard Blumenthal*, attorney general, for the appellees (named defendant et al.).

*Opinion*

MIHALAKOS, J. The plaintiffs[1] appeal from the declaratory judgment rendered by the trial court in favor of the defendants.[2] On appeal, the plaintiffs argue

---

[1] The plaintiffs are Helen Witty and Patricia Rasner, trustees of the Helen M. Witty trust.

[2] This action was originally filed against the town of Hartland, the planning and zoning commission of the town of Hartland, and the state department of environmental protection. The plaintiffs subsequently cited in abutting landowners as additional defendants.

that the court improperly failed to conclude that the unpaved segment of Pell Road that abuts their property in the town of Hartland is a public road. In support of that argument, the plaintiffs claim that the court (1) after properly concluding that an 1870 ordinance discontinuing portions of Pell Road as a public road was ambiguous, improperly (a) considered the circumstances surrounding the enactment of the ordinance and (b) resolved the ambiguity, (2) improperly refused to admit into evidence certain expert testimony, (3) improperly refused to admit into evidence (a) testimony concerning a 1996 meeting of the Hartland board of selectmen and (b) hearsay testimony that the plaintiffs had maintained was traditionary evidence and (4) abused its discretion in denying nonparties permission to file briefs as amici curiae. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our disposition of this appeal. In 1870, segments of Pell Road were discontinued as a public road following a majority vote by the townspeople and a majority vote by the board of selectmen. The townspeople voted to discontinue two segments of Pell Road: (1) "the Highway commencing at Henry A. Browns to the Road near Jeremiah Emmons" and (2) "the Road from *Richmond Bannings* north to the Road coming from Leverett Emmons to Roberts." (Emphasis added.) The board of selectmen, in its vote, described the latter segment, which is the subject of this declaratory judgment action, as "the Highway from *Richmond Bannings* north to the road running past Leverett Emmons to the William Roberts place." (Emphasis added.) In both instances, the location of the southern terminus of the segment at issue is identified by the phrase "Richmond Bannings."

In 1997, the plaintiffs, owners of a tract of land that abuts Pell Road, brought this declaratory judgment action seeking a declaration as to whether Pell Road

is a public highway, which would allow the plaintiffs to subdivide their property. In their action, the plaintiffs maintained that the reference to "Richmond Bannings" from the minutes to the board of selectmen meeting in 1870 referred to the northern boundary of an improved property once owned by Richmond Banning, a person. The court concluded, however, that "Richmond Bannings" referred to a house that Richmond Banning had owned. Thus, the court concluded that " 'from Richmond Bannings north' meant, to all concerned, 'from his house.' " It also concluded that that house, which no longer exists, had abutted Pell Road and had been located near the midpoint between the northern boundary and the southern boundary of the property that Richmond Banning had owned. As the court noted, both the "1869 Atlas of Hartland" and an "1870 Map of the Hartland Business Directory" show clearly the location of Richmond Banning's house. The court concluded that the unpaved portion of Pell Road that abuts the plaintiffs' property lies north of the place where Richmond Banning's house had been located and that in 1870 it was discontinued as a public road. Accordingly, the court rendered judgment in favor of the defendants, and this appeal followed. Additional facts and procedural history will be presented as necessary.

I

The plaintiffs claim that the court, after properly concluding that the 1870 ordinance was ambiguous, improperly (1) considered the circumstances surrounding the enactment of the ordinance and (2) resolved the ambiguity. We disagree.

"A local ordinance is a municipal legislative enactment and the same canons of construction which we use in interpreting statutes are applicable to ordinances." (Internal quotation marks omitted.) *Hall Manor Owner's Assn.* v. *West Haven*, 212 Conn. 147, 154, 561 A.2d

1373 (1989). "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case . . . . In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and *circumstances surrounding its enactment*, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Emphasis added; internal quotation marks omitted.) *Modern Cigarette, Inc.* v. *Orange*, 256 Conn. 105, 120, 774 A.2d 969 (2001). Because the questions presented by this claim concern issues of statutory interpretation, our review is plenary. See id., 121.

*Hall Manor Owner's Assn.*, when read in conjunction with the text of *Modern Cigarette, Inc.*, referred to in this opinion reveals that a court, when interpreting an ordinance, is free to consider the circumstances surrounding the enactment of that ordinance. Accordingly, the first part of the plaintiffs' claim fails. We now examine the record to determine whether the court correctly resolved the ambiguity in the 1870 ordinance.

The record discloses that the town's expert, Kathleen Hoerner, testified as follows. The town of Hartland endured a significant population loss during the nineteenth century. That loss, which totaled approximately one third of Hartland's population, occurred between 1800 and 1860 and resulted from migration to Ohio. Because of the reduced labor pool and diminished tax base, the town of Hartland "needed to discontinue some of the roads so that their—the maintenance of those roads could be kept to a minimum."

The record also discloses that an abridged version of a historical treatise about the residents of Hartland in

the eighteenth and nineteenth centuries (Gaines Notes) was admitted into evidence. A map of Hartland that was based on the Gaines Notes, which shows the location, in 1911, of homes, mills, highways and discontinued roads, also was admitted. That map indicates that in 1911 a segment of Pell Road, specifically, from Richmond Banning's house north to the Massachusetts border, was a discontinued road. Hoerner's testimony and the 1911 map, together with the fact that the 1870 ordinance provides "from Richmond Bannings north" and not "from Richmond Bannings *property* north," leads us to conclude that the court correctly concluded that the town of Hartland discontinued the unpaved segment of Pell Road that abuts the plaintiffs' property and, thus, properly resolved the ambiguity.

## II

Second, the plaintiffs claim that the court improperly refused to permit Terry Tondro, a legal expert, to present testimony concerning an ultimate issue, namely, "[w]hat location is specified by the term 'Richmond Bannings' as used in the 1870 ordinance?" We disagree.

The following legal principles guide our consideration of this claim. "[T]he trial court has wide discretion in ruling on the admissibility of expert testimony and, unless that discretion has been abused or the ruling involves a clear misconception of the law, the trial court's decision will not be disturbed. . . . Expert testimony should be admitted when: (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues." (Citations omitted; internal quotation marks omitted.) *State* v. *Billie*, 250 Conn. 172, 180, 738 A.2d 586 (1999). "An expert witness ordinarily may not express an opinion on an ultimate issue of fact, which must be decided

by the trier of fact." *State* v. *Vilalastra*, 207 Conn. 35, 41, 540 A.2d 42 (1988). An expert may, however, "give an opinion on an ultimate issue where the trier, in order to make intelligent findings, needs expert assistance on the precise question on which it must pass." (Internal quotation marks omitted.) *State* v. *Rodgers*, 207 Conn. 646, 652, 542 A.2d 1136 (1988).

In the present case, the plaintiffs have not demonstrated that the court needed expert assistance to determine properly the location specified by the term "Richmond Bannings" as used in the 1870 ordinance. Accordingly, we conclude that the court did not abuse its wide discretion in refusing to permit Tondro to present expert testimony on that issue. Accordingly, this claim fails.

### III

The plaintiffs also claim that the court improperly refused to admit into evidence (1) testimony concerning a 1996 meeting of the Hartland board of selectmen and (2) hearsay testimony that the plaintiffs had maintained was traditionary evidence. We reject both claims.

The following standard governs our review of these claims. "It is well established that [t]he trial court has broad discretion in ruling on the admissibility [and relevancy] of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion." (Citation omitted; internal quotation marks omitted.) *Potter* v. *Chicago Pneumatic Tool Co.*, 241 Conn. 199, 259, 694 A.2d 1319 (1997). We now address separately the plaintiffs' claims.

### A

The plaintiffs claim that the court improperly refused to admit hearsay testimony concerning a 1996 meeting of the Hartland board of selectmen (1996 meeting)

despite their contention that such testimony was both relevant *and* admissible under the admission exception to the hearsay rule.[3] We disagree.

"The proffering party bears the burden of establishing the relevance of the offered testimony. Unless such a proper foundation is established, the evidence . . . is irrelevant." (Internal quotation marks omitted.) *State* v. *Barnes*, 232 Conn. 740, 747, 657 A.2d 611 (1995). "Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is irrelevant or too remote if there is such want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter. . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative." (Internal quotation marks omitted.) *State* v. *Billie*, supra, 250 Conn. 181.

The record discloses that the 1996 meeting was held at the behest of one of the abutting landowners because "he was having a problem demonstrating ownership of the road and that was causing him a problem as far as selling the property and [he] asked if the town could clarify ownership for his benefit." It discloses also that, at the 1996 meeting, no official action was taken with respect to Pell Road. The proffered testimony, through which the plaintiffs sought to establish that the town

---

[3] "In civil as well as in criminal cases, [t]he words and acts of a party-opponent are generally admissible against him under the admission exception [to the hearsay rule]." (Internal quotation marks omitted.) *In re Zoarski*, 227 Conn. 784, 796, 632 A.2d 1114 (1993).

of Hartland's position regarding the 1870 ordinance was inconsistent,[4] did not have a logical tendency to aid the court in the determination of the issues. It also was too remote in time, for it concerned a meeting that took place 126 years after the 1870 ordinance was enacted. Consequently, the court did not abuse its discretion in refusing to admit the testimony, and, accordingly, this claim fails.

## B

The plaintiffs claim that the court improperly refused to admit into evidence the hearsay testimony of Adrian French despite their contention that that testimony was admissible pursuant to the hearsay exception for traditionary evidence.

During the trial, the plaintiffs sought to elicit from a witness testimony indicating that John Barber, the preceding owner of the plaintiffs' property, had made statements to him indicating that he believed that Pell Road was a public road. The plaintiffs did not seek to establish that Barber was dead or unavailable. The court precluded the plaintiffs from doing so on the ground that the questions called for hearsay testimony.

"The exception to the general rule excluding hearsay evidence, which permits in certain cases the reception of what is called traditionary evidence concerning facts of public or general interest affecting public or private rights, *is limited to proof of declarations of deceased persons, or persons supposed to be dead or who are not available as witnesses,* as to ancient rights of which they are presumed or are shown to have had competent knowledge, and which rights are incapable of proof in

---

[1] " '[C]onduct of a party to the proceeding, in respect to the matter in dispute, whether by acts, speech, or writing, which is clearly inconsistent with the truth of his contention, is a fact relevant to the issue.' " *Connecticut Union of Telephone Workers* v. *Southern New England Telephone Co.*, 148 Conn. 192, 202, 169 A.2d 646 (1961).

the ordinary way by living witnesses; and this exception is not to be favored or extended." (Emphasis added.) *Hartford* v. *Maslen*, 76 Conn. 599, 615, 57 A. 740 (1904).

In the present case, the court did not abuse its discretion in refusing to admit the testimony concerning Barber because the traditionary evidence exception to the hearsay rule is limited to instances in which the offering party establishes that the declarant is dead or otherwise unavailable. Accordingly, this claim fails.

## IV

The plaintiffs' final claim is that the court improperly refused to permit two of their experts to file briefs as amici curiae. Our rules of procedure provide a vehicle for a nonparty to obtain permission to file an appellate brief as an amicus curiae. See Practice Book § 67-7. Although the rules of practice do not specifically provide a vehicle for a nonparty to obtain permission to submit briefs or to appear as an amicus curiae, the rules do not prohibit such a request. See *Thalheim* v. *Greenwich*, 256 Conn. 628, 639–40, 775 A.2d 947 (2001). Permission to appear as amici curiae, however, rests in the sound discretion of the trial court. Id., 644. The trial court in this case determined that it would not be proper for the proposed amici, who are both attorneys, to testify as expert witnesses at trial and to appear as amici curiae. We conclude that the trial court did not abuse its discretion in making that determination.

The judgment is affirmed.

In this opinion the other judges concurred.