# AEL REALTY HOLDINGS, INC., ET AL. *v.* BOARD OF REPRESENTATIVES OF THE CITY OF STAMFORD ET AL.
## (AC 22565)

Foti, West and DiPentima, Js.

Argued February 18—officially released April 27, 2004

*Robert A. Fuller,* for the appellant (plaintiffs).

*Charles T. Lee,* with whom, on the brief, was *Matthew R. Paul,* for the appellee (named defendant).

*John W. Mullin,* assistant corporation counsel, for the appellee (defendant planning board of the city of Stamford).

*Opinion*

FOTI, J. The plaintiffs,[1] owners of real property in the city of Stamford, appeal from the judgment of the trial court dismissing their appeal from a decision of the defendant board of representatives of the city of Stamford.[2] On appeal, the plaintiffs claim that the court improperly concluded that (1) in an appeal from a decision of the defendant planning board of the city of Stamford to amend the city's master plan, the board of representatives lacked the authority to modify an amendment approved by the planning board and (2) the change in the master plan approved by the defendants did not constitute an inverse condemnation of the plaintiffs' property. We affirm the judgment of the trial court.

The underlying facts are not in dispute. The plaintiffs' undeveloped real property is situated on West Park Place in the downtown area of the city. In 1988, the plaintiffs obtained approval from the zoning board of the city of Stamford to construct a fifteen story structure consisting of 118 residential units on the property.

---

[1] The plaintiffs are AEL Realty Holdings, Inc., Mill River Tower Associates, LLC, and Snowfield Associates, LLC.

[2] The plaintiffs also named the planning board of the city of Stamford as a defendant.

The property is situated, for zoning purposes, in a zoning district suitable for residential, multifamily or high density use.

In January, 2000, the planning board, over the plaintiffs' objections and acting pursuant to powers delegated to it by the charter of the city of Stamford (charter), approved an amendment to the city's master plan.[3] That amendment was integral to the "Mill River Corridor Project," a comprehensive land use plan. One of that plan's underlying purposes was to reclaim and to enhance open space and parks in the heart of the city, primarily along the Mill River, as well as to create affordable housing in the area. The plaintiffs' property is located within the area encompassed by the plan, and the proposed amendment changed the property's designation under the city's master plan from land use category five (residential, multifamily, high density) to land use category thirteen (public parks).

Acting in accordance with § C6-30-7 of the Stamford Code of Ordinances (code), more than 20 percent of the owners of the privately owned land in the area directly affected by the amendment filed a petition with the planning board, objecting to the approval of the amendment. The planning board referred the matter to the board of representatives, which, after conducting a hearing on the amendment, approved it over the plaintiffs' objections.

The plaintiffs appealed from the decision of the board of representatives to the Superior Court. The court, in a thorough and well reasoned decision, dismissed the appeal. The present appeal followed. We will set forth additional facts in the context of the plaintiffs' claims.

I

The plaintiffs first claim that the court improperly concluded that in an appeal from a decision of the

[3] See footnote 4.

planning board to amend the city's master plan, the board of representatives lacked the authority to modify an amendment approved by the planning board. We disagree.

The plaintiffs raised their objections to the amendment before the board of representatives. The plaintiffs also asked the board of representatives to consider excluding their property from the amendment. At the hearing, board of representatives cochairman Donald B. Sherer and city attorney Andrew J. McDonald indicated that they believed that the board of representatives lacked the authority to exclude the plaintiffs' property from the amendment. They indicated that the board of representatives could either approve or reject the planning board's amendment; it could not modify it so as to exempt the plaintiffs' property from its effects. The board of representatives thereafter approved the amendment. The court determined that the Stamford charter did not grant the board of representatives the power to modify an amendment before it for review. Accordingly, the court held that the board of representatives properly declined to modify the amendment.

The resolution of the issue before us requires us to interpret provisions of the Stamford charter. That is a question of law, and our review of the trial court's conclusion is plenary. See *Witty* v. *Planning & Zoning Commission*, 66 Conn. App. 387, 390–91, 784 A.2d 1011, cert. denied, 258 Conn. 950, 788 A.2d 100 (2001). "It is well established that a city's charter is the fountainhead of municipal powers. . . . The charter serves as an enabling act, both creating power and prescribing the form in which it must be exercised. . . . It follows that agents of a city, including its commissions, have no source of authority beyond the charter. [T]heir powers are measured and limited by the express language in which authority is given or by the implication necessary to enable them to perform some duty cast upon them by

express language." (Internal quotation marks omitted.) *Alexander* v. *Retirement Board*, 57 Conn. App. 751, 758–59, 750 A.2d 1139, cert. denied, 254 Conn. 902, 755 A.2d 217 (2000). The interpretation of a charter is a question of law, and the rules of statutory interpretation generally apply. *Testa* v. *Waterbury*, 55 Conn. App. 264, 270, 738 A.2d 740 (1999).

Section C6-30-7 of the code provides in relevant part: "If twenty (20) percent or more of the owners of the privately-owned land in the area included in any proposed amendment to the Master Plan . . . file a signed petition with the Planning Board within ten days after the official publication of the decision thereon, objecting to the proposed amendment, then said decision shall have no force or effect but the matter shall be referred by the Planning Board to the Board of Representatives within twenty days after such official publication, together with written findings, recommendations and reasons. The Board of Representatives *shall approve or reject such proposed amendment* at or before its second regularly-scheduled meeting following such referral. When acting upon such matters the Board of Representatives shall be guided by the same standards as are prescribed for the Planning Board in Section C6-30-3 of this Charter.[4] The failure of the Board

---

[4] Section C6-30-3 of the Stamford charter, entitled "The Master Plan," provides in relevant part: "The Master Plan shall be the general land use Plan for the physical development of the City. The Plan shall show the division of Stamford into land use categories . . . .

***

"The land use categories indicated on the Master Plan shall be defined by the Planning Board and made a part of such Plan. The Plan shall also show the Board's recommendation for the following: streets, sewers, bridges, parkways, and other public ways; airports, parks, playgrounds and other public grounds; the general location, relocation and improvement of schools and other public buildings; the general location and extent of public utilities and terminals, whether publicly or privately-owned, for water, light, power, transit, and other purposes; the extent and location of public housing and neighborhood development projects. Such other recommendations may be made by said Board and included in the Plan as will, in its judgment, be beneficial to the City. Such Plan shall be based on studies of physical, social,

of Representatives *either to approve or reject said amendment* within the above time limit shall be deemed as approval of the Planning Board's decision. . . ." (Emphasis added.)

We are mindful that in interpreting the provisions of a charter, explicit words govern. "The language employed must be given its plain and obvious meaning, and, if the language is not ambiguous a court cannot arbitrarily add to or subtract from the words employed." (Internal quotation marks omitted.) *Arminio* v. *Butler*, 183 Conn. 211, 218, 440 A.2d 757 (1981). Here, the charter expressly limits the authority of the board of representatives when reviewing an amendment approved by the planning board to either accepting or rejecting the proposed amendment. The plain meaning of those provisions leaves room for no other interpretation. The charter confers on the board of representatives the authority to modify amendments in other situations, but does not do so here.

The plaintiffs argue that "common sense" dictates that we interpret the charter so as to afford the board of representatives the authority to modify amendments to the master plan approved by the planning board. The plaintiffs correctly point out that the charter instructs the board of representatives to act in a legislative capacity when reviewing amendments referred for its review by the planning board. The plaintiffs argue, therefore, that the charter conferred on the board of representatives the ability to exercise its legislative discretion so as to make "even minor" modifications to a proposed amendment. We disagree. We interpret the charter in light of its clear and unambiguous terms. The charter instructs the board of representatives to exercise its

economic, and governmental conditions and trends and shall be designed to promote with the greatest efficiency and economy, the coordinated development of the City and the general welfare, health and safety of its people."

legislative discretion in reviewing a proposed amendment to the master plan, but it likewise provides that the board of representatives shall reflect its approval or disapproval of the amendment under consideration by either accepting or rejecting it. The plaintiffs' arguments do not outweigh the plain language of the charter.

The plaintiffs, before both this court and the trial court, relied on *Stamford Ridgeway Associates* v. *Board of Representatives*, 214 Conn. 407, 572 A.2d 951 (1990), as authority for their proposition that the charter conferred on the board of representatives the authority to modify an amendment by approving only some parts of an amendment. The relevant issue in *Stamford Ridgeway Associates* was whether the Stamford charter conferred on the board of representatives, sitting in review of an *application* that had been approved by the zoning board and that consisted of several zoning changes, the authority to vote separately on each of the several zoning changes that were encompassed in the application. Id., 422.

The *Stamford Ridgeway Associates* court held that the charter afforded the board of representatives the authority to vote on each separate zone change encompassed in a single application for which a protest petition had been filed. Id., 436. In other words, the court held that the board of representatives need not vote on the application in the same manner that the zoning board had voted on it, that is, approving as a whole several amendments to the zoning map. The board of representatives could exercise its discretion to accept or reject each separate zone change encompassed in a single application. Id., 432–33.

Here, the issue is whether the charter confers on the board of representatives the authority to exempt selectively certain properties from an amendment to the master plan. *Stamford Ridgeway Associates* is dis-

tinguishable from the present case and does not lend support to the plaintiffs' suggested interpretation of the Stamford charter.

## II

The plaintiffs next claim that the court improperly concluded that the defendants' designation of their property on the master plan did not constitute an inverse condemnation of their property under the state and federal constitutions.[5] We disagree.

The facts underlying the plaintiffs' claim are undisputed. The issue is whether, as the plaintiffs suggest, the change in the classification of their property on the master plan amounted to a taking of their property by inverse condemnation. Our review of the court's legal conclusions is plenary; we must decide whether such conclusions are legally and logically correct and find support in the facts that appear in the record. See *Montville* v. *Antonino*, 77 Conn. App. 862, 864–65, 825 A.2d 230 (2003).

"Inverse condemnation is a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the government defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency. . . . An inverse condemnation claim accrues when the purpose of government regulation and its economic effect on the property owner render the regulation substantially equivalent to an eminent domain proceeding . . . . Accordingly, an inverse condemnation action has been aptly described as an eminent domain proceeding initiated by the property owner rather than the condemnor." (Citations omitted; inter-

---

[5] Rights in that regard are afforded by the fifth amendment to the United States constitution and article first, § 11, of the constitution of Connecticut.

nal quotation marks omitted.) *Cumberland Farms, Inc.* v. *Groton*, 262 Conn. 45, 73, 808 A.2d 1107 (2002).

"For inverse condemnation to occur, property does not have to be appropriated by governmental action to the extent that no value remains. It is sufficient if use of property is severely restricted and its profitability greatly reduced as a result of the action of the government." *Citino* v. *Redevelopment Agency*, 51 Conn. App. 262, 278–79, 721 A.2d 1197 (1998). The relevant inquiry here is whether the governmental regulation of the property has so financially burdened the landowner as to constitute a practical confiscation. "The financial burden imposed on a landowner by a regulation is measured by the extent to which the regulation interferes with the property owner's reasonable investment-backed expectations of use of the property. . . . A regulation does not constitute a compensable taking if it does not infringe on such reasonable investment-backed expectations." (Citation omitted.) *Bauer* v. *Waste Management of Connecticut, Inc.*, 234 Conn. 221, 257, 662 A.2d 1179 (1995).

As we have stated, the action complained of here is the approval of an amendment to the master plan. The Stamford zoning board has taken no action with regard to any of the zoning regulations pertaining to the plaintiffs' property and, for that reason, the plaintiffs' claim of inverse condemnation fails.

Our Supreme Court has repeatedly recognized the purpose underlying the creation of a town (or master) plan. "[A] town plan is merely advisory. . . . The purpose of the [town] plan is to set forth the most desirable use of land and an overall plan for the town. . . . The development plan is the planning commission's recommendation on the most desirable uses of all land within the community, including all public and private uses from street layouts to industrial sites. . . . Because the

overall objectives contained in the town plan must be implemented by the enactment of specific regulations, the plan itself can operate only as an interpretive tool." (Citations omitted; internal quotation marks omitted.) *AvalonBay Communities, Inc.* v. *Orange*, 256 Conn. 557, 574–76, 775 A.2d 284 (2001).

Generally, a master plan is "merely advisory in its effects . . . ." (Internal quotation marks omitted.) *Cristofaro* v. *Burlington*, 217 Conn. 103, 107 n.2, 584 A.2d 1168 (1991). Section C6-40-3 of the Stamford charter provides in relevant part: "After the effective date of the Master Plan the Zoning Map may, from time to time, be amended by the Zoning Board . . . . The Zoning Map shall not be amended by said Board to permit a use in any area which is contrary to the general land use established for such area by the Master Plan. . . ." "Even under Stamford's charter, where the recommendation [of the planning board] is more than advisory because the zoning board cannot amend the zoning map in a manner inconsistent with the master plan, the planning board does not legislate. It has no power to make, amend or repeal existing zoning regulations or zone boundaries. . . . The Stamford zoning board may, if it so chooses, ignore the recommendations of the master plan and refuse to amend the zoning map." (Citation omitted; internal quotation marks omitted.) *Sheridan* v. *Planning Board*, 159 Conn. 1, 9, 266 A.2d 396 (1969).

The plaintiffs argue that because of the amendment to the master plan, their investment backed expectations in the property have been significantly diminished. The plaintiffs argue in their brief that the amendment to the master plan "is strong evidence that condemnation [of their property] would occur when requested by the mayor [of the city of Stamford]." They argue that this is "a situation where the municipal government has taken all steps short of formal condemnation to obtain

the subject property for public open space." They also posit that "[u]nder the circumstances here, a prospective buyer would not buy the land and a lender would not finance it with the knowledge that the city is implementing plans and is about to acquire the land for open space." Those claims are founded in speculation. The court properly concluded, as a matter of law, that the plaintiffs are free to continue to use their property as it is currently zoned and that, for that reason, the defendants' action did not amount to an inverse condemnation.

The judgment is affirmed.

In this opinion the other judges concurred.