******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# THE METROPOLITAN DISTRICT *v.*
# DAVID B. MOTT ET AL.
# (AC 46665)

Elgo, Moll and Suarez, Js.

*Syllabus*

The defendants appealed from the trial court's judgment rendered on their counterclaim seeking a declaratory judgment and to quiet title with respect to the plaintiff's express easement encumbering their property. The defendants claimed, inter alia, that the court improperly rendered judgment for the plaintiff on their quiet title claim. *Held*:

This court lacked subject matter jurisdiction to review portions of the defendants' claim that the declarations issued by the trial court in adjudicating the counterclaim were improper, as the defendants failed to demonstrate that they were aggrieved by two of the declarations at issue, which mirrored or substantively tracked the language of the defendants' requested declarations.

The trial court's final declaration at issue was not improper, as the defendants misconstrued the scope of the court's declaration regarding the plaintiff's acquiescence to the defendants' encroachment in the easement area by their installation of a driveway and utilities.

The trial court did not improperly fail to address certain issues in adjudicating the counterclaim, as the court resolved one issue, there was no reason for the court to address a second issue, and the defendants abandoned their claim regarding a third issue by failing to brief it adequately.

The trial court improperly rendered judgment for the plaintiff on count two of the defendants' counterclaim seeking to quiet title, as, although the court deemed the lack of a dispute between the parties regarding ownership of the property, subject to the easement, to be dispositive, disputes arising as to an express easement when title to the encumbered property is not in question may be resolved pursuant to statute (§ 47-31), and, therefore, the court should have rendered judgment for the defendants to the extent that the court granted the defendants' requested relief.

This court declined to review the defendants' claim that the trial court improperly admitted irrelevant evidence at trial, as the defendants failed to identify, with any specificity, the evidence that the court purportedly erred in admitting.

The trial court did not improperly admit evidence at trial generally, as the defendants failed to establish that the court committed error in hearing evidence in order to resolve the counterclaim.

This court declined to review the defendants' claim that the trial court improperly declined to award them attorney's fees and costs pursuant to the rule of practice (§ 1-25), as the defendants failed to adequately brief their claim.

The trial court properly determined that the defendants were not entitled to attorney's fees and costs pursuant to statute (§ 48-17b), as the defendants neither alleged an inverse condemnation claim in the counterclaim nor successfully prosecuted such a claim, and, accordingly, § 48-17b was inapplicable to this case.

Argued May 27—officially released September 30, 2025

*Procedural History*

Action to quiet title to certain real property owned by the named defendant et al. over which the plaintiff held an easement, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the named defendant et al. filed a counterclaim; thereafter, the plaintiff withdrew its claims against the defendant R & R Construction, Inc., et al.; subsequently, the plaintiff withdrew its action and the counterclaim was tried to the court, *Rosen, J.*; judgment in part for the named defendant et al. on the counterclaim, from which the named defendant et al. appealed to this court. *Reversed in part*; *judgment directed.*

*Joseph M. Mott*, pro hac vice, with whom, on the brief, was *Proloy K. Das*, for the appellants (named defendant et al.).

*Elizabeth M. Cristofaro*, for the appellee (plaintiff).

*Opinion*

MOLL, J. The defendants and counterclaim plaintiffs David B. Mott and Jacqueline L. Mott (defendants)[1] appeal from the judgment of the trial court rendered

---

[1] The plaintiff's verified complaint named R&R Construction, Inc., James Trzcinski, and the town of Canton as additional defendants; however, the plaintiff subsequently withdrew its claims as to those parties. In the interest of simplicity, we refer to David B. Mott and Jacqueline L. Mott collectively as the defendants.

on their counterclaim seeking a declaratory judgment
and to quiet title with respect to an express easement
encumbering their property, which easement inures to
the benefit of the plaintiff and counterclaim defendant,
the Metropolitan District (plaintiff).[2] On appeal, the
defendants' claims distill to whether the court (1) com-
mitted error in issuing relief, (2) improperly failed to
address certain issues, (3) improperly rendered judg-
ment on their quiet title claim in the plaintiff's favor,
(4) abused its discretion in admitting evidence during
trial, and (5) improperly declined to award them attor-
ney's fees and costs. We reverse the judgment of the
trial court only insofar as the court rendered judgment
for the plaintiff on the entirety of the defendants' quiet
title claim.

The following undisputed facts, as found by the trial
court or as gleaned from the record, and procedural
history are relevant to our resolution of this appeal. On
May 29, 2015, the defendants purchased real property
located at 594 Albany Turnpike in Canton (property),
with the intent to build a house thereon. The property
is subject to an easement granted in favor of the plaintiff
in 1939, and the defendants were aware of the easement
before they purchased the property. The easement area
comprises a seventy-five foot wide section that runs
across the property, as well as a twenty-five foot wide
section that extends from the main section. Located
four to six feet below the ground within the easement
area is a forty-eight inch diameter water main pipeline
(pipeline), accompanied by pipe collars located three
to five feet below the ground, which the plaintiff

---

[2] "We note that the plaintiff has been identified alternatively as the Metro-
politan District and the Metropolitan District Commission in our case law."
*Metropolitan District* v. *Commission on Human Rights & Opportunities*,
180 Conn. App. 478, 480 n.1, 184 A.3d 287, cert. denied, 328 Conn. 937, 184
A.3d 267 (2018). We refer to the plaintiff as the Metropolitan District, the
moniker used by the plaintiff in its verified complaint and on appeal.

installed and which supplies water to approximately 400,000 people in the greater Hartford area.

The easement provides in relevant part that the plaintiff is granted "an easement for a [right-of-way] for the construction and maintenance of [pipelines] for the carriage of water over [the easement area] . . . . The [plaintiff] shall have the right to install and maintain one or more [pipelines] through said [right-of-way] and shall have the right at all times to enter upon said [right-of-way] for the purpose of inspecting, operating and repairing said [pipelines]. . . ." The easement further provides in relevant part that "[t]he grantor agrees not to erect any permanent buildings or other structures within the limits of said [right-of-way] and to maintain the surface of the ground at approximately the same grade not exceeding 12 inches up or down from the present surface over all parts of said [right-of-way]. The grantor shall have the right to use the surface of said [right-of-way] for any purpose connected with usual agricultural operations but not for orchard or timber raising or for any similar purpose which would interfere with the work of installing, maintaining or repairing said [pipelines]. The grantor shall have the right to build a road over said [right-of-way], provided the center line of said road shall be coincident with the center line of said [right-of-way] and built in such a manner as not to prevent or interfere with the layout of future [pipelines], and provided the [plaintiff] shall have free use of said road for the purpose of constructing, maintaining, operating and repairing said [pipelines] without responsibility for the maintenance or upkeep of said road. Nothing herein shall prevent the use of said [right-of-way] by the [plaintiff] herein for such [pipeline] uses as it may require nor shall the [plaintiff] be responsible for any damage which may be done to any road built by the grantor as a result of its use by the [plaintiff] or its agents. . . ."

In May, 2015, the defendants contacted the plaintiff to inquire about its permit process in connection with their intent to install a driveway over and underground utilities within the easement area. In response, the plaintiff provided the defendants with information regarding what it called its "encroachment permit process," which the court found to be a "voluntary encroachment process." Attached to the plaintiff's correspondence was a "sample encroachment agreement," with the plaintiff advising the defendants that "[a]n encroachment agreement will be needed if any development occurs within the limits of the right-of-way . . . ."[3] Among other provisions, the sample encroachment agreement delineated insurance requirements and set forth six "specific conditions" that the defendants would need to satisfy.

On February 11, 2016, the defendants sent a letter to the plaintiff "to request permission to permanently encroach upon the [plaintiff's] . . . right-of-way on [the] property as shown on [an] enclosed site plan." The defendants' correspondence also confirmed their understanding that six restrictions applied to their proposed construction project.[4]

On March 7, 2016, upon the recommendation of the plaintiff's Water Bureau (water bureau), the plaintiff passed a resolution[5] (March 7, 2016 resolution) authorizing the execution of an agreement, subject to approval by the plaintiff's district counsel, granting the defendants permission to proceed with their construction project and "to permanently encroach upon the [plaintiff's] [r]ight-of-[w]ay," provided that the plaintiff would

---

[3] During trial, David B. Mott testified that he had received the plaintiff's correspondence and the sample encroachment agreement, copies of which were admitted in full into the record.

[4] The six restrictions identified by the defendants substantively tracked the six "specific conditions" detailed in the sample encroachment agreement.

[5] The resolution was passed by the plaintiff's District Board. In the interest of simplicity, we treat the plaintiff and its District Board as one and the same.

not be held liable for any costs or damages in relation to the proposed construction project or any future construction, maintenance, or repair stemming from the encroachment. On April 18, 2016, the plaintiff sent the defendants a proposed encroachment agreement (encroachment agreement), which included the six restrictions previously acknowledged by the defendants and insurance requirements, among other terms. The defendants declined to execute the proposed encroachment agreement.[6]

Between September, 2016, and January, 2017, unbeknownst to the plaintiff, the defendants proceeded with their construction project. In January, 2017, after having discovered the defendants' construction activities, the plaintiff filed an application seeking an ex parte temporary restraining order and a temporary injunction, accompanied by an order to show cause and a verified complaint. In its one count verified complaint, the plaintiff asserted that it was "bring[ing] this action [to quiet title] pursuant to General Statutes § 47-31[7] seeking to enforce its long-standing . . . easement rights, protect its [pipeline], and otherwise settle the status of title with respect to the [property] owned by the [defendants]

---

[6] In an email sent by the defendants to the plaintiff on July 13, 2016, which email was admitted in full into the record, the defendants objected to the proposed encroachment agreement, stating that they could not "agree to amending the easement and placing additional burdens on [their] land title."

[7] General Statutes § 47-31 (a) provides: "An action may be brought by any person claiming title to, or any interest in, real or personal property, or both, against any person who may claim to own the property, or any part of it, or to have any estate in it, either in fee, for years, for life or in reversion or remainder, or to have any interest in the property, or any lien or encumbrance on it, adverse to the plaintiff, or against any person in whom the land records disclose any interest, lien, claim or title conflicting with the plaintiff's claim, title or interest, for the purpose of determining such adverse estate, interest or claim, and to clear up all doubts and disputes and to quiet and settle the title to the property. Such action may be brought whether or not the plaintiff is entitled to the immediate or exclusive possession of the property."

and impacted by the plaintiff's . . . easement." (Footnote added.) As relief, the plaintiff requested, inter alia, that the court (1) enjoin the defendants from proceeding with their construction project and (2) order the defendants to execute the encroachment agreement with the plaintiff before proceeding with any additional construction activities in, on, or near the easement area. On February 14, 2017, the defendants filed an objection to the plaintiff's application.

On February 16, 2017, the parties executed a settlement agreement (interim settlement agreement) resolving the plaintiff's application for a temporary injunction, which agreement the trial court, *Berger, J.*, approved that same day. The interim settlement agreement provided in relevant part that (1) the plaintiff would withdraw its application for a temporary injunction without prejudice, (2) the defendants were permitted to resume their construction activities, provided that, inter alia, they adhered to the conditions specified in the March 7, 2016 resolution, except for certain insurance requirements as detailed in the interim settlement agreement, and (3) "[n]o [e]ncroachment [a]greement will be signed or required at this time and no recording will be made [on] the [Canton] land records regarding any of the improvements/utilities located in the right-of-way, but the [p]laintiff reserves its right to seek that relief in the future. . . ." There is no dispute that the defendants completed the installation of the driveway and the utilities in March, 2017.

On April 3, 2017, upon the recommendation of the water bureau, the plaintiff passed a resolution authorizing the execution of an encroachment agreement consistent with the terms of the March 7, 2016 resolution, with the added requirement mandating the recording of the executed encroachment agreement on the Canton land records.

The interim settlement agreement did not resolve the plaintiff's quiet title claim. On June 29, 2017, the defendants filed an answer and special defenses, as well as a four count counterclaim. Counts one and two of the counterclaim sought, respectively, a declaratory judgment and to quiet title pursuant to § 47-31.[8] The defendants requested what we construe to be identical relief in both counts one and two, namely, declarations that (1) "the easement has not been altered or modified in any manner and remains in full force and effect"; (2) "the [defendants] had the right to install, and have the right to maintain, the utilities and driveway that they have installed without interference from the [plaintiff]";[9] and (3) "the [plaintiff] does not have a right to compel the [defendants] to sign an encroachment agreement that requires the modification or amendment of the easement, the provision of insurance in perpetuity, or that any such encroachment agreement be recorded on the Canton land records[10] . . . ."[11] (Footnote added.) The plaintiff subsequently filed an answer

[8] Counts three and four of the counterclaim sounded in abuse of civil process and a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., both of which the defendants withdrew before trial.

[9] This request for relief differed slightly in counts one and two of the counterclaim, as the requested declaration in count two omitted the phrase "without interference from the [plaintiff]."

[10] This request for relief differed slightly in counts one and two of the counterclaim, as the requested declaration in count two read: "That the [plaintiff] does not have a right to compel the [defendants] to sign an encroachment agreement that requires the modification or amendment of *the terms of* the easement, the provision of insurance in perpetuity, or that any such encroachment agreement be recorded on the Canton land records . . . ." (Emphasis added.)

[11] In counts one and two of the counterclaim, the defendants requested as relief several additional declarations, which were abandoned at trial. In a footnote in its memorandum of decision, the court, *Rosen, J.*, stated that, "[a]t the commencement of trial, the defendants advised the court that they were proceeding on the following prayers for relief only:" (1) with respect to count one, the three declarations that we detail in the body of this opinion; and (2) with respect to count two, the following four declarations: (1) "[t]hat the easement has not been altered or modified in any manner and remains in full force and effect"; (2) that the plaintiff has no right to enter onto the property without "reasonable advance notice and in a manner and pattern

and special defenses[12] to the counterclaim, which pleading it later amended.[13]

On April 24, 2020, pursuant to Practice Book § 13-19,[14] the defendants filed a demand for disclosure of

---

commensurate with similarly situated property owners, except in the event of an emergency"; (3) "[t]hat the [plaintiff] does not have a right to compel the [defendants] to sign an encroachment agreement that requires the modification or amendment of the terms of the easement, the provision of insurance in perpetuity, or that any such encroachment agreement be recorded on the Canton land records"; and (4) that the plaintiff had to negotiate with the defendants in good faith to purchase additional property rights for just compensation if it wanted to modify the easement. The record, however, does not support the court's recitation of the defendants' requested relief vis-à-vis count two.

During trial, the court stated that it wanted to "go through the prayers for relief in each of [the] two counts [of the counterclaim] and confirm which matters are still live and which matters have already been resolved." With respect to count one, the court confirmed that the defendants were requesting only the three declarations attendant to that count that we have detailed. As to the relief requested in count two, the court asked the parties' respective counsel whether the requested declarations "mirror[ed]" those in count one; both counsel responded in the affirmative. The court then stated: "All right. So, it's going to be the same determination as to those [requests for relief], as to the [requests for relief] in count one." The trial transcripts do not reflect that the defendants informed the court that, with respect to count two, they were seeking declarations concerning the plaintiff's entry onto the property with reasonable advance notice or the plaintiff's purchase of additional property rights; in fact, during trial, the defendants' counsel expressly notified the court that the defendants were not pursuing identical requested declarations in count one concerning those issues. Thus, we construe the record to demonstrate that the defendants represented to the court during trial that they were seeking identical relief in both counts one and two, namely, the three declarations that we have identified.

[12] The plaintiff asserted three special defenses: (1) untimeliness pursuant to Practice Book § 17-4 and General Statutes § 52-212a; (2) governmental immunity; and (3) unclean hands. The plaintiff withdrew the second and third special defenses before trial, and the court later determined that the plaintiff had abandoned its first special defense by failing to brief that defense in its posttrial brief.

[13] On April 14, 2022, pursuant to Practice Book § 10-60 (a) (3), the plaintiff filed a request for leave to file an amended answer, to which the defendants did not file an objection within fifteen days. See Practice Book § 10-60 (a) (3) ("[i]f no party files an objection to the request [for leave] within fifteen days from the date it is filed, the amendment shall be deemed to have been filed by consent of the adverse party").

[14] Practice Book § 13-19 provides in relevant part: "In any action to foreclose or to discharge any mortgage or lien or to quiet title, or in any action upon any written contract, in which there is an appearance by an attorney

defense. On May 4, 2020, the plaintiff filed a disclosure of defense, raising two defenses: (1) the defendants acquired title to the property subject to the easement granted in favor of the plaintiff, and (2) the express terms of the easement restrict the defendants to conducting certain activities on the surface of the easement area and prevent them from conducting any activities beneath the surface of the easement area, such that "the rights of the [plaintiff] with respect to the subsurface of the easement area are exclusive, and any attempt by the [defendants] to conduct or cause to conduct any activity in such subsurface is prohibited and constitutes an encroachment under the easement." That same day, upon the recommendation of the water bureau, the plaintiff passed a resolution rescinding its prior conditional approval of the defendants' construction project.

On September 23, 2021, the plaintiff withdrew the verified complaint. The next day, the plaintiff filed a motion to dismiss the counterclaim[15] as moot, asserting, inter alia, that (1) the defendants' installation of the driveway over and utilities within the easement area had been completed, (2) the plaintiff had withdrawn the verified complaint and rescinded its conditional approval of the defendants' encroachment on the easement, such that the attendant demand that the defendants execute an encroachment agreement to be

for any defendant, the plaintiff may at any time file and serve in accordance with Sections 10-12 through 10-17 a written demand that such attorney present to the court, to become a part of the file in such case, a writing signed by the attorney stating whether he or she has reason to believe and does believe that there exists a bona fide defense to the plaintiff's action and whether such defense will be made, together with a general statement of the nature or substance of such defense. . . ."

[15] The withdrawal of the verified complaint did not affect the viability of the counterclaim. See Practice Book § 10-55 ("[t]he withdrawal of an action after a counterclaim, whether for legal or equitable relief, has been filed therein shall not impair the right of the defendant to prosecute such counterclaim as fully as if said action had not been withdrawn, provided that the defendant shall, if required by the judicial authority, give bond to pay costs as in civil actions").

recorded on the Canton land records had been extinguished, and (3) "effecting the terms of the [interim] settlement agreement has provided the [defendants with] all the relief that they are seeking through the counterclaim." On October 22, 2021, the defendants filed an objection, and on November 4, 2021, the plaintiff filed a reply brief. On January 20, 2022, the court, *Sicilian, J.*, denied the plaintiff's motion to dismiss the counterclaim.

The matter was tried to the court, *Rosen, J.*, on May 3 and December 9, 2022. The court heard testimony from David B. Mott and two of the plaintiff's employees, and the court admitted several exhibits in full into the record. The parties subsequently filed posttrial briefs.

On June 16, 2023, the court issued a memorandum of decision adjudicating the counterclaim.[16] With regard to the declarations that the defendants requested as relief,[17] the court first addressed the defendants' request for a declaration that "the easement has not been

_____

[16] Preliminarily, the court addressed an assertion raised by the plaintiff in its posttrial brief that the court lacked subject matter jurisdiction to entertain the counterclaim for lack of ripeness because (1) the relief that the defendants sought was unrelated to the allegations in the counterclaim and (2) the defendants failed to adduce any evidence demonstrating that they were harmed by the plaintiff's conduct, such that their claims were "contingent on the outcome of a dispute that has not yet transpired, and indeed may never transpire, and any injury (which is not even alleged) would be hypothetical . . . ." The court rejected the plaintiff's ripeness claim, relying on "[t]he same analysis" employed by Judge Sicilian in denying the plaintiff's motion to dismiss the counterclaim. Specifically, the court iterated Judge Sicilian's determinations that, (1) pursuant to the interim settlement agreement, the plaintiff expressly reserved the right to seek to compel the defendants to execute an encroachment agreement in the future, (2) the plaintiff's resolutions established that it continued to maintain that the defendants had encroached on the easement and were required to execute an encroachment agreement, which was to be recorded on the Canton land records, and (3) nothing precluded the plaintiff from again raising in court the positions reflected in its resolutions. Neither party has briefed the issue of ripeness on appeal, and we discern no need to address it further.

[17] The court cited the declarations requested as relief in count one of the counterclaim; however, as we have determined, the defendants sought identical declarations as relief in count two. See footnote 11 of this opinion.

altered or modified in any manner and remains in full force and effect . . . ." The court determined that "[t]here was no evidence adduced at trial that the easement was altered or modified in any respect since it was recorded on the Canton land records in 1939, and the plaintiff agrees 'that the [easement] . . . has not been altered or modified and remains in full force and effect.' " Accordingly, the court declared "that the easement has not been altered or modified in any manner and remains in full force and effect."

Next, the court considered the defendants' request for a declaration that "the [defendants] had the right to install, and have the right to maintain, the utilities and driveway that they have installed without interference from the [plaintiff] . . . ." After citing language in the easement providing, inter alia, that the plaintiff had the right to install and to maintain one or more pipelines within the easement area, as well as the right to enter the easement area to inspect, to operate, and to repair any such pipelines, the court declared "that under the easement, the defendants had the right to install a driveway and underground utilities in the easement area on [the] property pursuant to a conditional approval granted by the plaintiff. The court expressly decline[d] to grant the defendants' request that the court declare '[t]hat the [defendants] had the right to install, and have the right to maintain, the utilities and driveway that they have installed without interference from [the plaintiff].' . . . The defendants must, of course, comply fully with their obligations under the easement and at law." (Citation omitted.)

Thereafter, the court turned to the defendants' request for a declaration that "the [plaintiff] does not have a right to compel the [defendants] to sign an encroachment agreement that requires the modification or amendment of the easement, the provision of insurance in perpetuity, or that any such encroachment

agreement be recorded on the Canton land records . . . ." After summarizing the plaintiff's authority as a political subdivision of the state,[18] the court determined that "[t]he plaintiff does not allege or argue that it has the power to compel the defendants to sign the encroachment agreement, only that it believes that it is appropriate for the defendants to do so." Accordingly, the court declared "that the plaintiff does not have a right to compel the defendants to sign an encroachment agreement that requires the modification or amendment of the easement, the provision of insurance in perpetuity, or the recording of any such encroachment agreement on the Canton land records. As the plaintiff aptly note[d] [in its posttrial brief], '[n]ow that the [defendants] have installed their improvements and built their home on the property, the parties must work to accommodate each other [going forward].' . . . If they do not, each party may seek appropriate remedies under the easement and at law as and when circumstances in the future may require." (Citation omitted; footnotes omitted.)

Next, the court briefly addressed, and rejected, arguments by the defendants that the plaintiff was barred from contesting their requests for declaratory relief (1) pursuant to the unclean hands doctrine and (2) because the plaintiff waived such right by withdrawing the verified complaint. With respect to the unclean hands doctrine, the court determined that (1) the basis of the defendants' invocation of the doctrine was the plaintiff's alleged (a) passage of " 'illegal' " resolutions and (b) breach of the interim settlement agreement, and (2) the doctrine was inapplicable because the plaintiff was not

---

[18] The plaintiff "is a political subdivision of the state, specially chartered by the Connecticut General Assembly for the purpose of water supply, waste management and regional planning. See 20 Spec. Acts 1204, No. 511 (1929); see also *Rocky Hill Convalescent Hospital, Inc.* v. *Metropolitan District*, 160 Conn. 446, 450–51, 280 A.2d 344 (1971)." (Footnote omitted.) *Martel* v. *Metropolitan District Commission*, 275 Conn. 38, 41, 881 A.2d 194 (2005).

seeking any relief following the withdrawal of the verified complaint. As for the waiver issue, the court determined that the plaintiff's withdrawal of the verified complaint did not constitute a waiver of its right to contest the allegations in the counterclaim, the material allegations of which the plaintiff had denied.

The court proceeded to adjudicate count two of the counterclaim seeking to quiet title. The court determined that "there is no dispute over title to the property. The parties agree that the defendants hold record title to the property, subject to the plaintiff's easement. Accordingly, judgment shall enter in favor of the plaintiff and against the defendants on count two of the counterclaim."

Finally, the court addressed requests by the defendants to award them attorney's fees and costs pursuant to several statutes, as well as Practice Book § 1-25. The court determined that the defendants were not entitled to attorney's fees and costs under any of the claimed provisions. This appeal followed. Additional facts and procedural history will be set forth as necessary.

Preliminarily, we note that resolving some of the defendants' claims requires us to interpret the court's decision and/or the counterclaim. "[T]he construction of a judgment is a question of law for the court. . . . As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . The judgment should admit of a consistent construction as a whole. . . . To determine the meaning of a judgment, we must ascertain the intent of the court from the language used and, if necessary, the surrounding circumstances." (Internal quotation marks omitted.) *Chartier* v. *Valliere*, 234 Conn. App. 1, 11,      A.3d (2025). "It is well established that the interpretation of

pleadings is always a question of law for the court
. . . . Our review of the trial court's interpretation of
the pleadings therefore is plenary. . . . Furthermore,
we long have eschewed the notion that pleadings should
be read in a hypertechnical manner. Rather, [t]he mod-
ern trend, which is followed in Connecticut, is to con-
strue pleadings broadly and realistically, rather than
narrowly and technically. . . . [T]he complaint [or
counterclaim] must be read in its entirety in such a way
as to give effect to the pleading with reference to the
general theory [on] which it proceeded, and do substan-
tial justice between the parties. . . . Our reading of
pleadings in a manner that advances substantial justice
means that a pleading must be construed reasonably,
to contain all that it fairly means, but carries with it
the related proposition that it must not be contorted
in such a way so as to strain the bounds of rational
comprehension." (Emphasis omitted; internal quotation
marks omitted.) *Hepburn* v. *Brill*, 348 Conn. 827, 848,
312 A.3d 1 (2024).

I

We first consider the defendants' claim that the decla-
rations issued by the trial court in adjudicating the
counterclaim were improper. We conclude that (1) we
lack subject matter jurisdiction to review portions of
the defendants' claim for lack of aggrievement and (2)
the remaining portion of the defendants' claim fails on
the merits.

A

The defendants contend that the court committed
error in declaring that (1) "the easement has not been
altered or modified in any manner and remains in full
force and effect" and (2) "the plaintiff does not have a
right to compel the defendants to sign an encroachment
agreement that requires the modification or amendment

of the easement, the provision of insurance in perpetuity, or the recording of any such encroachment agreement on the Canton land records." With respect to the former declaration, the defendants maintain that the court, inter alia, "never discussed the language of the easement or any other evidence or circumstance it may have relied upon to support its conclusion that the easement had not been altered or modified." (Footnote omitted.) As to the latter declaration, the defendants posit that the court predicated the declaration solely on the plaintiff's withdrawal of the verified complaint, which was not a sufficient ground supporting the declaration. The plaintiff argues, inter alia, that the defendants expressly requested that the court issue these two declarations, which we construe to be a claim that the defendants were not aggrieved by them. We conclude that the defendants cannot demonstrate that they were aggrieved by these two declarations, such that we lack subject matter jurisdiction to entertain the defendants' contentions.

"[P]roof of aggrievement is . . . an essential prerequisite to the court's jurisdiction of the subject matter of the appeal. . . . Ordinarily, a party that prevails in the trial court is not aggrieved. . . . Moreover, [a] party cannot be aggrieved by a decision that grants the very relief sought. . . . Such a party cannot establish that a specific personal and legal interest has been specially and injuriously affected by the decision." (Citations omitted; internal quotation marks omitted.) *Seymour* v. *Seymour*, 262 Conn. 107, 110–11, 809 A.2d 1114 (2002). Moreover, "a litigant has no right to appeal a judgment in his or her favor merely for the purpose of having the judgment based on a different legal ground than that relied upon by the trial court, or to settle an abstract question of law." (Internal quotation marks omitted.) *Jones* v. *Redding*, 296 Conn. 352, 366, 995 A.2d 51 (2010).

In the counterclaim, the defendants expressly requested as relief that the court issue declarations that (1) "the easement has not been altered or modified in any manner and remains in full force and effect" and (2) "the [plaintiff] does not have a right to compel the [defendants] to sign an encroachment agreement that requires the modification or amendment of the easement, the provision of insurance in perpetuity, or that any such encroachment agreement be recorded on the Canton land records . . . ." The two declarations in question that the court issued either mirrored or substantively tracked the language of the defendants' requested declarations. Accordingly, we conclude that there is no basis for the defendants to claim that they were aggrieved by the two declarations in question, such that we lack subject matter jurisdiction to consider the defendants' assertions challenging them. See, e.g., *Scalora* v. *Scalora*, 189 Conn. App. 703, 712–13 n.5, 209 A.3d 1 (2019) (concluding that this court could not review portion of defendant's claim when trial court resolved matter in defendant's favor, such that defendant could not claim aggrievement and lacked standing in relation to that portion of claim); *State* v. *Sanders*, 86 Conn. App. 757, 764, 862 A.2d 857 (2005) (concluding that this court could not review, for lack of aggrievement, defendant's claim when trial court resolved matter in defendant's favor).

B

The defendants also assert that the court improperly declared that, "under the easement, the defendants had the right to install a driveway and underground utilities in the easement area on their property pursuant to a conditional approval granted by the plaintiff." The defendants contend that the plaintiff had no "approval authority" cabining their right to install a driveway and

utilities in the easement area.[19] In short, the defendants misconstrue the court's decision in this regard. The court determined that (1) the plaintiff enjoyed certain benefits pursuant to the easement, including the right to enter the easement area to inspect, to operate, and to repair the pipeline, (2) the plaintiff utilized a "voluntary encroachment process" to assess whether proposed construction within the easement area posed a threat to the pipeline, and (3) pursuant to this process, the plaintiff conditionally approved the defendants' construction project within the easement area. We do not interpret the court's decision to reflect a determination that the plaintiff was imbued with binding, enforceable "approval authority" regulating the defendants' activity within the easement area; rather, we construe the decision as determining that the plaintiff, after following its "voluntary encroachment process," had acquiesced to the defendants' encroachment[20] in the easement area

---

[19] Relying on the principle that "a declaratory judgment action must rest on some cause of action that would be cognizable in a nondeclaratory suit"; *Wilson* v. *Kelley*, 224 Conn. 110, 116, 617 A.2d 433 (1992); the defendants further contend that all of the court's declarations "lacked an essential nexus to a viable claim or cause of action" because the plaintiff withdrew the verified complaint and the court "dismissed" count two of the counterclaim seeking to quiet title. This contention is unpersuasive. The court did not dismiss count two; rather, it rendered judgment in the plaintiff's favor on that count. As we explain in part III of this opinion, insofar as the court granted the defendants the relief that they requested vis-à-vis count two, the court should have rendered judgment in the defendants' favor thereon.

[20] The defendants take issue with a statement in the court's decision that they "had encroached on the easement" by engaging in construction activities within the easement area prior to the filing of the present action. The defendants maintain that the court misapplied the term "encroached" because "a claim that the defendants 'encroached' is inconsistent with the defendants' fee title to the property." Our case law belies this position. See, e.g., *Lyme Land Conservation Trust, Inc.* v. *Platner*, 325 Conn. 737, 743, 159 A.3d 666 (2017) (setting forth finding that property owner's relocation of driveway "encroached" on conservation easement encumbering property); *Kelly* v. *Ivler*, 187 Conn. 31, 34–35, 48, 450 A.2d 817 (1982) (setting forth finding that property owners' fence "slight[ly] encroach[ed]" on easement located along boundary of property); *Connecticut Light & Power Co.* v. *Holson Co.*, 185 Conn. 436, 437–38, 440 A.2d 935 (1981) (noting that action involved request for injunctive relief to require property owner to remove portion of building "encroach[ing]" on easement encumbering property).

by their installation of the driveway and the utilities, provided certain conditions were satisfied. Thus, the defendants' claim is unavailing.

## II

The defendants next claim that the trial court improperly failed to address three issues in adjudicating the counterclaim. The defendants maintain that the court did not determine whether (1) the relief requested by the plaintiff in the withdrawn verified complaint, seeking orders that the defendants execute the encroachment agreement and that the executed encroachment agreement be recorded on the Canton land records, was improper as a matter of law, (2) the plaintiff " 'own[ed]' " or had " 'exclusive use and possession of the subsurface' " of the easement, and (3) the resolutions adopted by the plaintiff concerning the easement were illegal. For the reasons that follow, this claim is untenable.

With respect to the first issue—whether the plaintiff improperly requested as relief in the withdrawn verified complaint orders that the defendants execute the encroachment agreement and that the executed encroachment agreement be recorded on the Canton land records—the court issued a declaration that the plaintiff had no right to compel the defendants to sign the encroachment agreement or to demand the recording of any such agreement on the land records. See part I A of this opinion. In light of this declaration, and assuming that this issue was properly before the court notwithstanding the plaintiff's withdrawal of the verified complaint, we conclude that there was no reason for the court to address the propriety of the plaintiff's requested relief.

Moreover, the court expressly found that the defendants held record title to the property, such that we do not construe the court's use of the term "encroached" to be inconsistent with its finding that the defendants owned the property.

As to the second issue—whether the plaintiff " 'own[ed]' " or had " 'exclusive use and possession of the subsurface' " of the easement area—the court expressly found that the defendants held record title to the property, subject to the easement. "It is well settled that [a]n easement . . . obligates the possessor not to interfere with the rules authorized by the easement. . . . [T]he benefit of an easement . . . is considered a nonpossessory interest in land because it generally authorizes limited uses of the burdened property for a particular purpose. . . . [E]asements are not ownership interests but rather privileges to use [the] land of another in [a] certain manner for [a] certain purpose . . . . The use of an easement must be reasonable and as little burdensome to the servient estate as the nature of the easement and the purpose will permit. . . . [T]he owner of an easement has all rights incident or necessary to its proper enjoyment, [although] nothing more." (Citation omitted; internal quotation marks omitted.) *Hamer* v. *Byrne*, 231 Conn. App. 53, 68, 333 A.3d 158, cert. denied, 351 Conn. 930, 334 A.3d 482 (2025), and cert. denied, 351 Conn. 930, 334 A.3d 483 (2025). In short, we interpret the court's decision to reflect a determination that the plaintiff (1) neither owned nor had exclusive use and possession of the easement area, including the subsurface of the easement area, but (2) had rights pursuant to the easement, such as access to the easement area, including the subsurface thereof, with which rights the defendants were prohibited from interfering. Thus, we conclude that, contrary to the defendants' position, the court resolved the second issue.

Turning to the third issue—whether the resolutions adopted by the plaintiff were illegal—the court mentioned this issue in two different sections of its decision. First, the court acknowledged that the defendants

raised this issue as part of their unclean hands argument; however, the court did not address the issue further on the basis of its conclusion that the doctrine was inapplicable because the plaintiff was not seeking any relief following the withdrawal of the verified complaint. The defendants do not address on appeal the court's resolution of their unclean hands argument, beyond making an isolated assertion in their principal appellate brief that the court improperly "overruled the equitable defenses of unclean hands and waiver . . . ." Thus, we conclude that the defendants have abandoned any claim challenging this aspect of the court's decision by failing to brief it adequately. See *Robb* v. *Connecticut Board of Veterinary Medicine*, 204 Conn. App. 595, 611, 254 A.3d 915 ("We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited." (Internal quotation marks omitted.)), cert. denied, 338 Conn. 911, 259 A.3d 654 (2021).

Second, the court observed that the defendants were seeking attorney's fees and costs pursuant to General Statutes § 48-17b in part because the plaintiff had "adopted 'invalid and improper' resolutions"; however, the court did not discuss the issue further because it determined that § 48-17b was inapplicable. As we conclude in part V B of this opinion, the court correctly determined that § 48-17b was inapplicable, and, therefore, the defendants were not entitled to attorney's fees and costs pursuant to that statute. Thus, there was no

reason for the court to address whether the plaintiff's resolutions were illegal in the context of the defendants' § 48-17b claim.[21]

In sum, we reject the defendants' claim that the court improperly failed to address the three issues in question.

### III

The defendants next claim that the trial court improperly rendered judgment in the plaintiff's favor on count two of the counterclaim seeking to quiet title pursuant to § 47-31. The defendants assert that the court improperly (1) determined that § 47-31 was not applicable to disputes concerning easements and (2) disposed of count two solely on the basis of its determination that the parties did not dispute that the defendants owned the property, subject to the easement. The plaintiff argues that the court properly resolved count two in its favor on the basis of its determination that there was no dispute as to title. For the reasons that follow, we conclude that the judgment rendered in favor of the plaintiff on count two must be reversed in part.

Insofar as resolving the defendants' claim requires us to interpret § 47-31, we exercise plenary review. See *Civic Mind, LLC* v. *Hartford*, 229 Conn. App. 615, 637, 328 A.3d 225 (2024) (questions of statutory interpretation are subject to plenary review), cert. denied, 351 Conn. 919, 333 A.3d 103 (2025). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . .

---

[21] Insofar as the defendants contend on appeal that they raised an issue regarding the legality of the plaintiff's resolutions outside of the context of their unclean hands argument and § 48-17b claim, we note that they did not request as relief in the counterclaim a declaration invalidating any resolution issued by the plaintiff. See *Chicago Title Ins. Co.* v. *Bristol Heights Associates, LLC*, 142 Conn. App. 390, 418, 70 A.3d 74 (defendant's right to recovery was limited by allegations in counterclaim), cert. denied, 309 Conn. 909, 68 A.3d 662 (2013).

In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . It is a basic tenet of statutory construction that [w]e construe a statute as a whole and read its subsections concurrently in order to reach a reasonable overall interpretation." (Internal quotation marks omitted.) Id., 637–38.

Section 47-31 provides in relevant part: "(a) An action may be brought by any person claiming title to, or any interest in, real or personal property, or both, against any person who may claim to own the property, or any part of it, or to have any estate in it, either in fee, for years, for life or in reversion or remainder, or to have any interest in the property, or any lien or encumbrance on it, adverse to the plaintiff, or against any person in whom the land records disclose any interest, lien, claim or title conflicting with the plaintiff's claim, title or interest, for the purpose of determining such adverse estate, interest or claim, and to clear up all doubts and disputes and to quiet and settle the title to the property. . . .

"(f) The court shall hear the several claims and determine the rights of the parties, whether derived from deeds, wills or other instruments or sources of title, and may determine the construction of the same, and render judgment determining the questions and disputes and quieting and settling the title to the property."

In rendering judgment for the plaintiff on count two of the counterclaim, the court deemed the lack of a dispute between the parties regarding ownership of the property, subject to the easement, to be dispositive.

Our case law demonstrates, however, that disputes arising as to an express easement when title to the encumbered property is not in question—as is the case here—may be resolved pursuant to § 47-31. See, e.g., *Fitch* v. *Forsthoefel*, 194 Conn. App. 230, 233, 239, 220 A.3d 876 (2019) (affirming judgment for plaintiff, inter alia, on quiet title count seeking determination of rights of parties under express easement). This conclusion is supported further by the language of § 47-31, providing in relevant part that an action may be brought "for the purpose of determining [an] adverse estate, interest or claim [to that of the plaintiff], *and to clear up all doubts and disputes* and to quiet and settle the title to the property"; (emphasis added) General Statutes § 47-31 (a); and that "[t]he court shall hear the several claims and determine the rights of the parties . . . and render judgment *determining the questions and disputes* and quieting and settling the title to the property." (Emphasis added.) General Statutes § 47-31 (f). In our view, resolving disputes surrounding an express easement that encumbers a property, the ownership of which is not in dispute, functions to quiet and to settle title to the property as contemplated by § 47-31.

In disposing of the defendants' quiet title claim, the trial court cited to *Simonds* v. *Shaw*, 44 Conn. App. 683, 691 A.2d 1102 (1997). In *Simonds*, the trial court concluded that the plaintiffs enjoyed an easement by prescription for a right-of-way over a portion of the defendants' property and issued injunctive relief prohibiting the defendants from obstructing the right-of-way. Id., 684–86. On appeal, the defendants asserted, inter alia, that the trial court improperly awarded the plaintiffs injunctive relief because the plaintiffs had an adequate remedy at law available by way of § 47-31. Id., 686. This court rejected that claim, determining that (1) the plaintiffs had pursued a prescriptive easement claim

pursuant to General Statutes § 47-37[22] and (2) "§ 47-31 creates an action to quiet title that is not relevant to a claim of an easement because actual ownership of the property is not at issue." Id., 686–87. In the years following *Simonds*, our courts have addressed easement disputes raised in the context of quiet title claims pursued under § 47-31. See, e.g., *Walters* v. *Servidio*, 227 Conn. App. 1, 7, 9, 320 A.3d 1008 (2024) (plaintiff sought to quiet title as to alleged express and implied easements); *Fitch* v. *Forsthoefel*, supra, 194 Conn. App. 233, 239 (plaintiff sought to quiet title as to scope of express easement); *First Union National Bank* v. *Eppoliti Realty Co.*, 99 Conn. App. 603, 604, 610, 915 A.2d 338 (2007) (plaintiff sought to quiet title by claiming easement of necessity). Moreover, our research has revealed no case that has cited *Simonds* for the proposition that § 47-31 is inapplicable to resolve claims regarding easements. See, e.g., *Travelers Property & Casualty Co.* v. *Christie*, 99 Conn. App. 747, 765 n.13, 916 A.2d 114 (2007) (concluding that reasoning of early twentieth century appellate case regarding prejudgment interest had not been adopted in subsequent cases when, although never overruled, appellate case had never been cited for that reasoning); *Burke* v. *Avitabile*, 32 Conn. App. 765, 772 n.9, 630 A.2d 624 (deeming prior appellate case "anomalous" insofar as appellate case ostensibly indicated that motion for summary judgment could be used to test legal sufficiency of complaint prior to judgment when appellate case was published more than twenty years earlier and had never been cited for that proposition), cert. denied, 228 Conn. 908, 634 A.2d 297 (1993), and cert. denied, 228 Conn. 908, 634 A.2d 297 (1993). Accordingly, we conclude that *Simonds*' isolated statement regarding § 47-31, which

[22] General Statutes § 47-37 provides: "No person may acquire a right-of-way or any other easement from, in, upon or over the land of another, by the adverse use or enjoyment thereof, unless the use has been continued uninterrupted for fifteen years."

was not supported by any analysis or citation to legal authority; see *Simonds* v. *Shaw*, supra, 686–87; cannot be relied on to limit the scope of quiet title claims brought pursuant to § 47-31.

Having concluded that the court committed error in adjudicating count two of the counterclaim, we now turn to the appropriate remedy. As we have explained, the defendants sought identical relief in counts one and two, namely, that (1) "the easement has not been altered or modified in any manner and remains in full force and effect"; (2) "the [defendants] had the right to install, and have the right to maintain, the utilities and driveway that they have installed without interference from the [plaintiff]"; and (3) "the [plaintiff] does not have a right to compel the [defendants] to sign an encroachment agreement that requires the modification or amendment of the easement, the provision of insurance in perpetuity, or that any such encroachment agreement be recorded on the Canton land records . . . ." The court afforded the defendants the relief that they sought in part, issuing declarations mirroring or substantively tracking the first and third requested declarations but declining to issue the second requested declaration, such that, in essence, the court partially quieted title in the defendants' favor. Therefore, we conclude that the court should have rendered judgment in the defendants' favor on count two insofar as the court granted the defendants' requested relief. See, e.g., *Freidheim* v. *McLaughlin*, 217 Conn. App. 767, 776–77, 803, 290 A.3d 801 (2023) (concluding that trial court improperly rendered summary judgment in defendants' favor on portion of count of plaintiff's complaint seeking to quiet title as to view easement and remanding case with direction to render summary judgment in plaintiff's favor as to that portion of quiet title count). Insofar as the court did not afford the defendants the relief that they requested vis-à-vis count two, we further conclude that

the court properly rendered judgment in the plaintiff's favor on that count.

IV

We next turn to the defendants' claim that the trial court improperly admitted irrelevant evidence during trial. For the following reasons, this claim either (1) is unreviewable or (2) fails on the merits.

The following additional procedural history is relevant to our consideration of this claim. In a pretrial brief that they filed, the defendants argued that "[a]ll of [their] claims for relief are legal questions and there are no facts or arguments the [plaintiff] can interpose to defeat the requested relief." Additionally, prior to trial, the defendants filed three motions in limine seeking to preclude the plaintiff from introducing "extrinsic evidence" at trial.[23] On the first day of trial, prior to the start of evidence, the defendants' counsel alerted the court to the pending motions in limine. The court responded: "Yeah, the court is not going to be ruling on any motions in limine. If there are objections that come up during the trial, I'll take them on the fly."[24]

Thereafter, the defendants' counsel requested an opportunity to present an opening statement to explain to the court "that there is no fact issue to be decided by the court, other than the possibility of sanctions, because the remaining questions that [the defendants have] identified are all legal questions . . . ." The court

---

[23] The defendants filed a fourth motion in limine vis-à-vis an expert witness retained by the plaintiff. During trial, without expressly adjudicating this motion in limine, the court precluded the expert witness' testimony.

[24] The defendants contend on appeal that the court "never ruled on," "refused to consider," or "ignored" their motions in limine. The record reflects that the court decided to address the defendants' evidentiary objections during trial in lieu of adjudicating their motions in limine, which belies the defendants' characterization of the court's handling of the motions. Moreover, the defendants do not identify any evidentiary objections that they raised, and that the court overruled, during the evidentiary portion of the trial.

denied that request and proceeded to review with the parties' counsel their agreement as to the admission of certain exhibits. Afterward, the court asked the defendants' counsel to present the defendants' first witness, whereupon the defendants' counsel iterated "that this is a legal issue. There is no fact issue. . . . [I]f [the court] disagree[s] with that analysis, [the defendants] can [introduce] the witness . . . on the one issue that would matter. . . . I maintain . . . the entire case at this point [consists of] legal issues. There are no fact issues." The court responded: "All right. Well, I'm not going to tell you how to try your case, so you can decide what you want to put before the court . . . ."[25] The court then rejected another request by the defendants' counsel to provide additional argument, noting that the defendants had filed a pretrial brief and the court was "familiar with the argument." The defendants' counsel proceeded with the defendants' case-in-chief. In their posttrial brief, the defendants maintained that the issues posed by the counterclaim comprised "only legal questions without any disputed facts for the court to resolve . . . ."

The defendants assert on appeal that, during trial, the court admitted irrelevant evidence because "[t]here were no fact issues to be decided in the case; there were only legal questions for the . . . court to rule upon. . . . There were no factual disputes the . . . court was called upon to decide." The defendants further contend that "[f]act evidence would only have been relevant and admissible for unreasonable or material interference with easement rights or a scope of easement rights claim," but no such claims were at issue before the court. Insofar as the defendants' claim pertains only to certain evidence, our review of such a

---

[25] The court also inquired as to whether a motion for summary judgment had been filed, and the defendants' counsel confirmed that the defendants had filed a motion for summary judgment, which had been denied by the court, *Sheridan, J.*, in 2019.

claim is frustrated by the defendants' failure to identify, with any specificity, the evidence that the court purportedly erred in admitting. Without this requisite information, we cannot afford the defendants review of their evidentiary claim. See *Aspiazu* v. *Orgera*, 205 Conn. 623, 636–37 n.5, 535 A.2d 338 (1987) ("[w]hen raising evidentiary issues on appeal, all briefs should identify clearly what evidence was excluded or admitted, where the trial counsel objected and preserved his rights and why there was error"); see also *Weaver* v. *Sena*, 199 Conn. App. 852, 866, 238 A.3d 103 (2020) ("[i]t is not the role of this court to scour the record in search of support for a party's claim on appeal"); *State* v. *Tocco*, 120 Conn. App. 768, 786–87, 993 A.2d 989 ("this court is not an advocate for any party; it would be beyond the proper role of this court in resolving the issues raised on appeal to sift through the voluminous record before us and speculate as to the specific evidence at issue in the present claim"), cert. denied, 297 Conn. 917, 996 A.2d 279 (2010).

Alternatively, insofar as the defendants maintain that the court should not have received *any* evidence at trial, that contention is untenable. The court was charged with adjudicating counts one and two of the counterclaim seeking a declaratory judgment and to quiet title. The defendants have failed to establish that the court committed error in hearing evidence in order to resolve the counterclaim.[26]

[26] Moreover, assuming that the defendants had demonstrated that the court abused its discretion in admitting evidence; see *Martin* v. *Olson*, 226 Conn. App. 392, 405, 318 A.3d 1067 (abuse of discretion standard of review applies to evidentiary rulings), cert. denied, 350 Conn. 902, 322 A.3d 1059 (2024); their principal appellate brief is bereft of any substantive legal analysis explaining how they were harmed by such error. See id. ("[B]efore a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . The harmless error standard in a civil case is whether the improper ruling would likely affect the result." (Internal quotation marks omitted.)).

## V

The defendants' last claim is that the trial court improperly declined to award them attorney's fees and costs pursuant to (1) Practice Book § 1-25 and (2) § 48-17b.[27] We address each subclaim in turn.

"Ordinarily, we review the trial court's decision to award attorney's fees for abuse of discretion. . . . This standard applies to the amount of fees awarded . . . and also to the trial court's determination of the factual predicate justifying the award. . . . When, however, a damages award is challenged on the basis of a question of law, our review is plenary." (Internal quotation marks omitted.) *Indoor Billboard Northwest, Inc.* v. *M2 Systems Corp.*, 202 Conn. App. 139, 197, 245 A.3d 426 (2021).

## A

The defendants contend that the court improperly declined to award them attorney's fees and costs pursuant to Practice Book § 1-25. For the reasons that follow, we decline to review this claim.

Practice Book § 1-25 provides in relevant part: "(a) No party or attorney shall bring or defend an action, or assert or oppose a claim or contention, unless there is a basis in law and fact for doing so that is not frivolous. . . .

"(b) Except as otherwise provided in these rules, the judicial authority, solely on its own motion and after a hearing, may impose sanctions for actions that include, but are not limited to, the following:

---

[27] In their posttrial brief, the defendants further argued that they were entitled to attorney's fees and costs pursuant to (1) General Statutes § 52-240 and (2) General Statutes § 52-245. The court also declined to award attorney's fees and costs to the defendants pursuant to these statutes. The defendants do not challenge the court's decision in that regard.

"(1) Filing of pleadings, motions, objections, requests or other documents that violate subsection (a) above . . . .

"(c) The judicial authority may impose sanctions including, but not limited to, fines pursuant to General Statutes § 51-84; orders requiring the offending party to pay costs and expenses, including attorney's fees; and orders restricting the filing of papers with the court.

"(d) Offenders subject to such sanctions may include counsel, self-represented parties, and parties represented by counsel."

In rejecting the defendants' request for attorney's fees and costs pursuant to Practice Book § 1-25, the court construed the defendants' request to be predicated solely on the ground that the plaintiff's disclosure of defense was frivolous. The court interpreted the plaintiff's disclosure of defense to raise two defenses: "(1) the defendants were on notice at the time of [their] purchase [of the property] as to the terms [of] the easement; and (2) the express terms of the easement controlled the rights and obligations of the parties within the easement." The court then determined that the plaintiff's disclosure of defense was not frivolous because (1) the defendants were aware of the easement before they purchased the property and (2) the easement's express terms controlled the parties' rights and obligations.

The defendants contend on appeal that they were entitled to attorney's fees and costs pursuant to Practice Book § 1-25, propounding various reasons to support their argument that the plaintiff engaged in conduct that was frivolous and lacked good faith. The defendants, however, do not discuss the court's reasoning in rejecting their claim under § 1-25, that is, that the plaintiff's disclosure of defense was not frivolous. Under these circumstances, where the defendants have not

addressed the dispositive basis for the court's rejection of their § 1-25 claim, we decline to review the defendants' claim as inadequately briefed. See *Sicignano* v. *Pearce*, 228 Conn. App. 664, 692, 325 A.3d 1127 (2024) (declining to review plaintiff's claim as inadequately briefed when plaintiff failed to address dispositive bases of court's decision), cert. denied, 351 Conn. 908, 330 A.3d 881 (2025).

B

The defendants also assert that the court improperly determined that they were not entitled to attorney's fees and costs pursuant to § 48-17b. We disagree.

Section 48-17b provides in relevant part: "The state court rendering a judgment for the plaintiff in an inverse condemnation proceeding brought against the state by the owner of real property . . . shall determine and award or allow to such plaintiff, as a part of such judgment . . . such sum as will in the opinion of the court . . . reimburse such plaintiff for his reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of such proceeding."

In their posttrial brief, the defendants argued that, pursuant to § 48-17b, they were entitled to attorney's fees and costs because the plaintiff had engaged in "actions [that] constitute[d] an attempted and deliberate act of inverse condemnation though admittedly not a sufficient deprivation of the [defendants'] property interests to permit [an inverse condemnation] claim." In its posttrial brief, the plaintiff argued that § 48-17b was inapplicable because the defendants had neither pleaded nor proven an inverse condemnation claim.

In rejecting the defendants' claim for attorney's fees pursuant to § 48-17b, the court concluded that the statute was inapplicable because the defendants (1) conceded in their posttrial brief that they did not assert

an inverse condemnation claim, (2) did not receive a judgment in an inverse condemnation proceeding in their favor, and (3) did not provide any evidence demonstrating that the use of their property had been restricted in any manner, "let alone that the plaintiff's actions somehow '[had] so financially burdened the [defendants] as to constitute a practical confiscation.' *AEL Realty Holdings*, *Inc.* v. *Board of Representatives*, 82 Conn. App. 613, 621, 847 A.2d 998 (2004)."

The defendants maintain on appeal that the plaintiff engaged in conduct that constituted an improper regulatory taking under the color of law, thereby entitling them to attorney's fees and costs under § 48-17b.[28] As the court correctly determined, however, the defendants neither alleged an inverse condemnation claim in the counterclaim nor successfully prosecuted such a claim. Accordingly, the court properly concluded that § 48-17b was inapplicable to this case.[29] See *Cumberland Farms*, *Inc.* v. *Groton*, 262 Conn. 45, 81 n.35, 808 A.2d 1107 (2002) ("under . . . § 48-17b, *a property*

---

[28] The defendants do not refer expressly to § 48-17b in their appellate briefs; however, on the basis of their discussion of regulatory takings, we construe this subclaim to be challenging the court's rejection of their request for attorney's fees and costs pursuant to § 48-17b.

[29] In light of our conclusion that § 48-17b is inapplicable because the defendants failed to plead an inverse condemnation claim and did not successfully prosecute such a claim, we need not address the court's third reason for rejecting the defendants' § 48-17b claim, namely, that the defendants failed to demonstrate that the use of their property had been restricted in any manner. See *AEL Realty Holdings*, *Inc.* v. *Board of Representatives*, supra, 82 Conn. App. 621 ("For inverse condemnation to occur, property does not have to be appropriated by governmental action to the extent that no value remains. It is sufficient if use of property is severely restricted and its profitability greatly reduced as a result of the action of the government. . . . The relevant inquiry here is whether the governmental regulation of the property has so financially burdened the landowner as to constitute a practical confiscation. The financial burden imposed on a landowner by a regulation is measured by the extent to which the regulation interferes with the property owner's reasonable investment-backed expectations of use of the property. . . . A regulation does not constitute a compensable taking if it does not infringe on such reasonable investment-backed expectations." (Citation omitted; internal quotation marks omitted.)).

*owner who successfully prosecutes an inverse condemnation claim* may receive, in addition to compensation for the taking, reimbursement for certain costs and expenses" (emphasis added)).

The judgment is reversed in part with respect to count two of the defendants' counterclaim only and the case is remanded with direction to render judgment on that count consistent with this opinion; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.